## EDWARD FRENNIER'S CASE.

Berkshire.    September 18, 1945. — November 2, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act*, Incapacity; Procedure: decree. *Words*, "Total and permanent disability."

"Total and permanent" disability within § 34A, inserted in G. L. c. 152, by St. 1935, c. 364, and amended by St. 1943, c. 276, means disability which prevents the employee from performing remunerative work of a substantial character within his ability to perform, having regard to his age, experience, training and capabilities, but not necessarily complete physical or mental incapacity.

A finding, that a laborer or skilled workman had suffered a "total and permanent" disability within G. L. (Ter. Ed.) c. 152, § 34A, as inserted by St. 1935, c. 364, and amended by St. 1943, c. 276, was warranted by evidence that his hands were so badly mangled while at work that parts of several of his fingers were amputated and other fingers were impaired in usefulness whereby he became unable to compete in the open labor market.

A decree entered in the Superior Court in a workmen's compensation case merely affirming a decision by the Industrial Accident Board awarding compensation was erroneous in form; it should have adjudicated the employee's disability and made appropriate orders for the payment of compensation.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board in a proceeding under the workmen's compensation act.

The case was heard by *Beaudreau, J.*

*A. E. Quimby & M. J. Aldrich*, for the insurer, submitted a brief.

No argument nor brief for the claimant.

DOLAN, J.    This workmen's compensation case comes before us upon the appeal of the insurer from the decree entered in the Superior Court which "affirmed" the decision of the reviewing board to the effect that the employee was totally and permanently disabled by reason of injuries arising out of and in the course of his employment on September 23, 1935, and awarding compensation therefor.

The insurer "accepted the case" and paid compensation at the rate of $10.67 a week, based on an average weekly wage of $16, up to October 16, 1943, when $4,500 had been paid, and also paid "fifty weeks' specific compensation for the loss of use of the left hand as a hand and thirty-seven weeks' specific compensation for the right middle, ring and little fingers, — a total of eighty-seven weeks." The employee then applied for further compensation under G. L. (Ter. Ed.) c. 152, § 34A, inserted by St. 1935, c. 364, and amended by St. 1943, c. 276, on the ground that the disability caused by his injury was total and permanent.

The evidence most favorable to the employee may be summed up as follows: On September 23, 1935, while the employee was working as a press operator at a tanning plant, his hands were caught in the press. As a result of the accident both the employee's hands were badly mangled, and it was necessary to amputate the first, middle and ring fingers of his left hand at the third joint. The little finger of that hand was fractured, and an attempt was made to repair it in the hope that it might be made straight, but the attempt failed. The employee has "a pretty good thumb" on the left hand, but the little finger is just a hook toward the palmar surface. There is no strength in that little finger. The middle, ring and little fingers of the right hand were all amputated at the third joint. The first finger of that hand was "pretty well battered . . . but they got a serviceable finger, — something that is better than nothing." There is motion in that finger "practically"; there is "a little limitation in the middle joint" of that finger. The right hand was lacerated down to the palm. There was just enough tissue to cover that over without further amputation. The employee cannot lift much of anything. "The only fingers he has any respectable use of at all . . . [are] the thumb and first finger of the right hand." He could do no manual work. He could not perform his work as a press operator. Since the accident the employee has worked part of one day at the tannery where he had a "job writing with a pencil." He worked for about an hour but could not stand it. If he tries to use the first finger to

figure for fifteen or thirty minutes, "he will start to have cramps" in the metacarpal joint of the index finger and "gets pains" in that joint. If he is writing, he has to take hold of his finger with his other hand and push the finger out to drop the pencil. He worked off and on for about a half hour a day in a grocery store, but received no money compensation. The grocer gave him a few cigarettes or some tobacco, and sometimes gave him a little piece of meat and, after meat was rationed, some groceries. The employee passed out handbills for the grocer once a week during one summer but had to cease when cold weather started. From 1920 (on his return from the army) to 1928 or 1929 the employee had worked as electrician in a cotton mill in Easthampton, having been engaged in repairing motors and switches, in taking out motors, and in making general repairs. That was heavy work. He could not do it now. He went to work for the General Electric Company in 1928 or 1929, where he remained a year or a year and a half. Leaving that work during the depression, he did laboring work on the "E. R. A." for a while. There was evidence that he "might be able to operate . . . a lever elevator" if that would be permitted by the "Massachusetts safety commission." But he was refused work calling for the operation of a freight elevator. He probably could sit and watch something, but his "hearing is bad." The foregoing evidence was adduced from the testimony of the employee and of the surgeon who treated the employee and was called as a witness by him. There was also evidence from which it could be found that the employee made reasonable efforts to obtain some kind of work that he could perform but was unsuccessful, and that efforts of the insurer to that end failed.

The medical expert called by the insurer testified in part that the employee could not do the electrical work in which he had once been engaged nor the work of a press operator that he was doing when injured; that he was totally and permanently incapacitated for doing all the work that he had been associated with or has tried to be associated with from 1916 to the date of the accident in 1935; that it would

certainly be difficult for him to find something to do; that he was incapable of any sustained effort that would require holding something with the right hand; and that he cannot compete in the open labor market. This witness, however, was of opinion that the employee could operate a "push button" type of elevator with his fingers, and thought he could operate a lever action elevator.

The single member of the board found that the employee had always been a skilled worker and had never been a laborer; that as far as his right hand is concerned he has a practically normal thumb and an index finger which on account of the injury is about fifty per cent of normal; and that the remaining three fingers were amputated "to the metacarpophalangeal joints." He further found the facts adduced in the evidence hereinbefore recited as to the employee's left hand, that the employee, "a skilled worker," is unable by reason of his injuries, which arose out of and in the course of his employment, to compete in the open labor market, and that the disability suffered by him is total and permanent; and ordered the insurer to pay compensation at the minimum rate of $9 a week, together with the amount due to the date of decision ($210.86). These findings were adopted by the reviewing board with appropriate orders for payment of compensation, and the decision of the reviewing board was "affirmed" by the judge of the Superior Court.

The contentions of the insurer are that the decree entered by the judge was erroneous, since it merely affirmed the decision of the reviewing board without more; that the evidence most favorable to the employee establishes that the employee is physically able to earn wages; and that he has failed to prove that his injuries have resulted in his total and permanent disability so as to prevent him from earning wages.

The contention of the insurer with respect to the form of the decree entered by the judge will be disposed of hereinafter. We do not concur in the other contentions of the insurer.

The decision of the reviewing board must be accepted as

final if supported by the evidence and not tainted by error of law. *Sawyer's Case*, 315 Mass. 75, 76. *Roney's Case*, 316 Mass. 732, 734. *Webb's Case, ante,* 357. The evidence was amply sufficient to support the decision of the reviewing board that the employee, as a result of his injuries arising out of and in the course of his employment, was totally and permanently disabled within the meaning of the act. It is apparent from the terms of § 34A, as amended, that total and permanent disability is intended to mean total and permanent disability to earn wages. This is evidenced by the provision therein that if "an employee who has been agreed or found to be totally and permanently disabled earns wages at any time thereafter, payments of compensation may be suspended in the manner provided by section twenty-nine." The total and permanent disability therefore is to be construed to be such as to prevent the employee from engaging in any occupation and performing any work for compensation or profit, that is, from obtaining and retaining remunerative employment of any kind within his ability to perform. Complete physical or mental incapacity of the employee is not essential to proof of total and permanent disability within the meaning of the statute. It is sufficient if the evidence shows that the employee's disability is such that it prevents him from performing remunerative work of a substantial and not merely trifling character, and regard must be had to the age, experience, training and capabilities of the employee. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219, 220. *Boss* v. *Travelers Ins. Co.* 296 Mass. 18, 22–23. *London Guarantee & Accident Co. Ltd.* v. *Cox,* 41 Ga. App. 329. *Consolidation Coal Co.* v. *Crislip,* 217 Ky. 371. *Olson* v. *Triplett,* 255 Ky. 724. *Fulton Ice Co.* v. *Meacham,* 273 Ky. 483. *Meznarich* v. *Republic Coal Co.* 101 Mont. 78. See *United States* v. *Rice,* 72 Fed. (2d) 676, 677. The nature of the inquiry is the same as in cases under G. L. (Ter. Ed.) c. 152, § 34, where the question is whether the injury has resulted in total incapacity, and is usually a question of fact. *Hummer's Case,* 317 Mass. 617, 624, and cases cited. See also *Sheppard's Case,* 287 Mass. 459, 464; *Fennell's*

*Case,* 289 Mass. 89, 94; *Akins's Case,* 302 Mass. 562, 564. The finding of the reviewing board that the employee has never worked as a laborer is inconsequential. It is manifest that the evidence supports the decision of the reviewing board that the employee suffers total and permanent disability within the meaning of the statute as a result of his injuries, whether his previous employment was that of a laborer or skilled workman. We discover no error of law in the decision of the reviewing board.

The decree entered by the judge is defective in form. *Webb's Case, ante,* 357. Instead a final decree is to be entered after rescript establishing that the employee is totally and permanently disabled as a result of injuries arising out of and in the course of his employment, and ordering the payment of weekly compensation in accordance with the decision of the reviewing board, together with payment of the amount due to the employee to the date of final decree after rescript.

*So ordered.*