**Irving AUGUST, Plaintiff, Appellant,**

v.

**OFFICES UNLIMITED, INC., Defendant, Appellee.**

**No. 91–2329.**

United States Court of Appeals, First Circuit.

Heard May 6, 1992.

Decided Dec. 11, 1992.

---

Howard I. Wilgoren, Framingham, MA, for plaintiff, appellant.

William B. Koffel, with whom Foley, Hoag & Eliot, Boston, MA, was on brief, for defendant, appellee.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and PETTINE,* Senior District Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

This appeal arises from an alleged wrongful employment termination. Defendant-appellee Offices Unlimited, Inc. ("OUI") fired plaintiff-appellant Irving August from his position as an office furniture salesman in May 1989. In 1990, August filed an eleven-count complaint against OUI and two other defendants in

---

* Of the District of Rhode Island, sitting by designation.

United States District Court for the District of Massachusetts. On October 30, 1991, the district court granted defendants' summary judgment motion as to all eleven claims raised by August's complaint.[1]

The sole issue now presented is whether the district court erred in granting summary judgment in favor of OUI on August's claim that his employment termination constituted a discriminatory discharge on the basis of a handicap in violation of Massachusetts statute Mass.Gen.L. ch. 151B, § 4(16).[2] For the reasons stated below, we affirm.

## I. BACKGROUND

August worked as an office furniture salesman for OUI and its predecessor company since 1966. He began experiencing symptoms of clinical depression in late 1988. In September 1988, August went to his internist, Dr. Martin Vogel, for a routine physical examination. At this visit, August told Dr. Vogel that he felt distressed because of number of personal and family problems, including the fact that his pay from OUI had been cut by fifty percent.

On February 14, 1989, August visited Dr. Vogel again. August asked the doctor to write a letter to OUI recommending that August be given a month's leave of absence from work. August later presented this letter to OUI management. Dr. Vogel's letter stated that August "has been severely distressed with resultant weight loss, fatigue and weakness. It is most desirable that he have a month's leave from work to avoid continued stress. During this time he will receive therapy in hopes that on his return he can better compensate."

At a February 1989 meeting with OUI management August requested a one-month leave of absence. OUI responded to this request by offering August a six-week paid leave. August preferred to continue working another month until April 1st because the weather would be better then. OUI initially agreed to the April 1st start, but later asked August to leave on March 27, 1989, because of complaints OUI had received from one of August's customers. Before leaving, August met with OUI sales personnel to arrange for his accounts to be covered by other sales representatives while he was away.

In early May, August contacted Mel Goldberg, his supervisor at OUI, to notify him that he would not be able to return to work on May 8, 1989, the scheduled end of the leave period. August also sent Goldberg a letter from Dr. Stanley Wallace, a psychiatrist. Dr. Wallace's letter, dated May 3, 1989, stated that August "is currently under my care for treatment of his Major Depression. He has shown significant improvement in his condition but has not yet fully recovered. My estimation is that he will require another two to four weeks before complete recovery is

---

1. In addition to the appealed state law claim of discriminatory discharge, these included federal and state claims alleging unlawful age discrimination, intentional infliction of emotional distress, breach of employment contract, wrongful discharge, and claims arising out of August's participation in a limited partnership. August did not appeal from the grant of summary judgment as to any of these. The district court's jurisdiction over the state law claims was conferred by 28 U.S.C. § 1367(a). This court's jurisdiction to hear August's present appeal is conferred by 28 U.S.C. § 1291.

2. The Massachusetts statute at issue states, in relevant part, that it is an unlawful practice [f]or any employer personally or through an agent, to dismiss from employment ..., because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business.

Mass.Gen.L. ch. 151B, § 4(16).

August's claim of discrimination on the basis of a handicap, the sole claim on appeal, can be maintained only against OUI, as the other two defendants were not named as respondents in a charge of discrimination filed by August with the Massachusetts Commission Against Discrimination. See Mass.Gen.L. ch. 151B, §§ 5, 9. At the request of OUI's counsel, August moved for voluntary dismissal of his appeal as to those two defendants. That motion was granted by this court on January 14, 1992. Thus, OUI is the only appellee in this case.

achieved." Goldberg told August that he could take an additional two weeks off, until May 22, 1989, but that the time would count as vacation.

At August's request, he met with Goldberg and Marilyn Campbell, OUI's Director of Administration, on May 11, 1989. According to August's deposition, at the meeting he told the OUI officials that he expected to feel ready to return to work by May 22. When asked whether he was "100 percent better," August replied, "I don't know if I'm 100 percent until I start working." Goldberg told August that the company would expect "110 percent" from him and that August was "going to be under a lot more pressure than [he was] prior to leaving." August was advised that business conditions were worsening, that fewer sales representatives were available to handle customer accounts, and that he would be assigned different accounts when he returned.

August says he asked if he could "come back on a part-time basis" and if he "could miss the first couple of sales meetings because the sales meetings were in the morning" when he experienced side effects of the antidepressant medication. Goldberg refused both requests. Ms. Campbell suggested that if August continued to feel unable to work, he should consider applying for disability benefits under the company's insurance plan.

August claims that the May 11 meeting so distressed him as to reactivate his depression. On May 12, 1989, August made out and executed a claim application under the company's disability plan. In the signed application, August asserted that he had been totally and continuously disabled since March 24, 1989. August also wrote on the form that he did not know when he would be able to resume work. An attending physician's statement attached to the application, completed by Dr. Wallace, verified that August had been totally disabled since March 1989 and that it was unknown when he could resume part-time or full-time work.

In a letter dated May 18, 1989, August's attorney notified OUI that August had filed for disability benefits. In that letter the attorney stated that "[t]he commencement date of Mr. August's disability was March 27, 1989." The letter made no mention of when August would return to OUI. Four days later, August's attorney wrote to Goldberg again, maintaining that August had not resigned from OUI and that it was his "intention to return to his employment with OUI upon the conclusion of his disability." Again, August's attorney did not indicate when August might return.

On May 22, 1989, the end of the second leave of absence, August did not report for work. On May 25, 1989, Campbell, on OUI's behalf, sent August a letter informing him that his employment with OUI was terminated effective June 1, 1989, because "it is certainly unclear when and if you will be able to return to work." The letter explained that OUI could not continue to have other sales representatives temporarily cover August's accounts because "continuity of staff managing account business is, as you know, critical in our industry." Except for the termination letter, there is no evidence of any communication between August and OUI on or after May 22, 1989.

August renewed his claim for disability benefits in December 1989, February 1990, April 1990, and June 1990. Each signed application stated that he had been totally and continuously disabled since late March 1989, the day he began his first leave of absence from OUI. Attached to each application was a statement from Dr. Wallace, verifying the fact that August had been totally disabled since March 1989.

## II. STANDARD OF REVIEW

The district court granted OUI's summary judgment motion on all counts. Regarding the handicapped discrimination claim, the court found that August was not a "qualified handicapped person" and that, even if he was, OUI had made all necessary reasonable accommodations to his handicap. The appropriate standard of review for cases disposed of by summary judgment was recently articulated by this Court in another employment discrimination case.

Since appellate review of a grant of summary judgment is plenary, the court of appeals, like the district court, "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." An appellate panel is not restricted to the district court's reasoning but can affirm a summary judgment on any independently sufficient ground. In the end, the entry of summary judgment can be upheld only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *see* Fed.R.Civ.P. 56.

■ We accordingly review the district court's grant of summary judgment *de novo,* looking at the entire record in the light most favorable to August. However, to avoid summary judgment, August must be able to point to specific, competent evidence to support his claim. *Wynne v. Tufts Univ. School of Medicine,* 976 F.2d 791, 795 (1st Cir.1992); *Mesnick,* 950 F.2d at 822. Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact. *Wynne,* 976 F.2d at 795; *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989).

## III. DISCUSSION

■ "Chapter 151B protects people against unlawful discrimination. It does not protect against all instances of arbitrary action or from poor managerial judgment." *Wheelock College v. Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 355 N.E.2d 309, 314 (1976). The provision under which August sued

protects only "qualified handicapped persons." *See* Mass.Gen.L. ch. 151B, § 4(16). Thus, August must demonstrate that he is a "qualified handicapped person." *Conway v. Boston Edison Co.,* 745 F.Supp. 773, 781 (D.Mass.1990); *Mueller v. Corenco Corp.,* 13 M.D.L.R. 1146, 1153 (Mass. Comm'n Against Discrim.1991); *Silva v. Fairhaven Marine, Inc.,* 11 M.D.L.R. 1173, 1183 (Mass.Comm'n Against Discrim.1989). Massachusetts statute Mass.Gen.L. ch. 151B, § 1(16) defines the term "qualified handicapped person" as "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."

■ Like the district court, we shall assume, although without deciding, that viewing the facts most favorably to August, his depression rendered him "handicapped" within the meaning of Section 1(16). *See Wynne,* 976 F.2d at 793 n. 2; *see also Shea v. Tisch,* 870 F.2d 786, 786 (1st Cir.1989) (person with "anxiety disorder" was handicapped for purposes of federal discrimination law); *McWilliams v. A.T. & T. Information Systems, Inc.,* 728 F.Supp. 1186, 1188 (W.D.Pa.1990) (person with "severe depression and anxiety" was handicapped for purposes of Pennsylvania discrimination statute).[3] August concedes that he was not capable of performing his job without accommodation by OUI. Thus, we must decide whether or not there was at least a genuine issue of material fact that, if OUI made reasonable accommodation to August's handicap, he would have been able to perform his job.

■ August contends that he would have been able to return to work on May 22, 1989, if OUI had only granted his requests to miss some morning meetings and to work part-time. Assuming, for purposes of argument, that permission to miss sales meetings and work part-time would have been "reasonable accommodations" to re-

---

**3.** In interpreting Massachusetts discrimination statutes, Massachusetts courts may look to the interpretations of analogous federal statutes,

but are not bound thereby. *College–Town v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587, 591 (1987).

quire the employer to have made in these circumstances, the record is nonetheless fatally bereft of indication that August possessed the ability to perform his job.[4] The record indicates that from approximately March 24, 1989, until the time this case was argued, August was simply incapable of performing the essential functions of any job, let alone a furniture sales position at OUI. This fact was established by August's own sworn statements on numerous disability insurance claim forms, in which he asserted that he was totally and continuously disabled from March 24, 1989, onward. Written statements signed by his psychiatrist, Dr. Wallace, verify his total disability.

For example, August filed his first application for disability benefits with the Provident Life and Accident Insurance Company on May 12, 1989, one day after the May 11 meeting with OUI. On that form, August attested that the dates of his "total disability" were "March 24, 1989 through continuing." Dr. Wallace, when asked on the accompanying physician's form to describe the "patient's present limitations," wrote "total disability." Dr. Wallace also affirmed that, in his opinion, August was "now necessarily totally disabled." On all the other insurance forms in the record—filed in December 1989, February 1990, April 1990, and June 1990—August declares himself to be totally disabled since approximately March 24, 1989.[5] The record also shows that Provident Life approved August's applications and paid him benefits for his total disability. Nowhere on any form did August indicate that his disability began or was aggravated on May 11, the date of his meeting with OUI.

Under any definition of the term, August's declaration that he was "totally disabled" means that he was not able to perform the essential functions of his job at OUI, with or without reasonable accommodations, since late March 1989. The record does not show exactly how "total disability" was defined in August's insurance policy; the Provident Life application form described total disability simply as an "inability to work." As used in insurance contracts, "total disability" generally means a "person is incapacitated from performing any substantial part of his ordinary duties, though still able to perform a few minor duties and be present at his place of business." *Black's Law Dictionary* 462 (6th ed. 1990). An insurance treatise states that "total disability" means "the infirmity or disability renders the person unable to perform substantially all the material acts of an occupation which his age, training, experience and physical condition would suit him for,...." 15 *Couch on Insurance 2d* § 53.40, at 76 (rev. ed. 1983); *see Velez Gomez v. SMA Life Assurance Co.,* 793

---

4. We do not decide whether August's requests to report late to work and to work on a part-time schedule would have been reasonable accommodations to have required of the employer under these circumstances. Federal regulations state that "job restructuring" and "part-time or modified work schedules" may sometimes constitute reasonable accommodations. 29 C.F.R. § 1613.704(b). However, employers "are not required to find another job for an employee who is not qualified for the job he or she was doing." *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987). Employers are only required not to "deny an employee alternative employment opportunities reasonably available under the employer's existing policies." *Id.*

Furthermore, whether schedule or job description changes are reasonable accommodations depends on the circumstances. In cases similar to this one, courts have found no duty to accommodate handicapped employees by modifying the job schedule or description. *See, e.g., Guice–Mills v. Derwinski,* 967 F.2d 794, 797–98

(2d Cir.1992) (holding that a nurse whose depression and sedating medication forced her to report to work two hours late was not "otherwise qualified" for her position); *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir.1991) ("[T]he City does not have to create a new job for Chiari; therefore, it does not have to create a new part-time position for him."); *see also Pesterfield v. Tennessee Valley Auth.,* 941 F.2d 437, 441–42 (6th Cir.1991) (affirming decision that employer had no duty to place mentally-ill employee in a stress-free environment); *Shea v. Tisch,* 870 F.2d 786, 788–90 (1st Cir.1989) (affirming decision that employer had no duty to reassign worker with anxiety disorder to a less stressful location, in part because it would violate a collective bargaining agreement).

5. August was not consistent in specifying the date of the onset of his total disability. On subsequent insurance forms, he listed the date also as March 9, 1989, and March 29, 1989.

F.Supp. 378, 383 (D.P.R.1992). Under Massachusetts workers' compensation law, "totally disabled" means one is "unable to engage in any occupation, or obtain or perform any work for compensation or profit." *Cierri's Case*, 379 Mass. 914, 396 N.E.2d 149, 149 (1979); *Frennier's Case*, 318 Mass. 635, 63 N.E.2d 461, 463 (1945).

That August was disabled from performing his job at OUI either part-time or full-time on all relevant dates is further borne out by other uncontroverted facts. After leaving work on March 27, 1989, August underwent psychiatric treatment and showed no sign of intending to return to work. August himself told Goldberg in early May that he would not be able to resume work on May 8, the end of the granted leave period. At the May 11 meeting, August told Goldberg and Campbell that he probably would be ready by May 22 but was not ready yet. However, August points to nothing in the record from which a trier of fact might conclude that, on and after May 22, he was in fact able to work in some capacity. At a hearing in the district court, the court asked August's attorney about August's ability to work on May 22:

> THE COURT: Was there any question at that time—May 22nd—that he was not capable of returning to work?
>
> MR. WILOGREN: As of May 22nd, he was not capable of returning to work …

It was stated by August's attorney, during oral argument before this Court, that August was completely and totally disabled from at least May 22, 1989 to the present time.

Because there is no evidence from which to infer that August was not completely and totally disabled since the last week in March 1989, no reasonable fact finder could conclude that, at relevant times, he was a qualified handicapped person within the meaning of Mass.Gen.L. ch. 151B, § 4(16). Permission to miss morning meetings or to

work part-time, as requested on May 11, could not have enabled one who was totally disabled and thus incapable of working either part-time or full-time to do his job. Neither is August's further contention— that a third leave of absence, which he never requested, might have enabled him to recover—supported by anything in the present record, even assuming that another extension of his leave would have been a reasonable accommodation.[6]

The Eighth Circuit has held that a totally disabled employee is not an "otherwise qualified handicapped individual under the federal Rehabilitation Act." The plaintiff in *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988), was hospitalized for physical and emotional ailments which, she alleged, arose out of pressures from her teaching job at defendant's school. *Id.* at 769. She filed for disability insurance benefits after informing the defendant that she was unable to work because of her mental and physical problems, and that she would be unable to work in the foreseeable future. *Id.* at 770. Plaintiff later sued her employer for discontinuing her salary and benefits, alleging handicapped discrimination in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The district court rejected plaintiff's claim, holding that she was not an "otherwise qualified handicapped individual" because she was totally disabled and thus no longer able to perform her job. *Id.* at 771. Affirming the district court ruling, the Court of Appeals wrote:

> [S]ection 504 was designed to prohibit discrimination within the ambit of an employment relationship in which the employee is potentially able to do the job in question. Though it may seem undesirable to discriminate against a handicapped employee who is no longer able to

***

**6.** August cites *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990), in support of his claim that OUI should have offered him a third leave of absence. However, *Kimbro* only held that an employer's failure to offer *any* leave of absence to an employee with

chronic migraine headaches violated Washington's handicap discrimination law. *See id.* at 879. The *Kimbro* court expressly qualified its holding, stating that it did not obligate ARCO to grant a *second* leave if the migraine condition recurred after return from the initial leave. *Id.* at 879 n. 10.

do his or her job, this sort of discrimination is simply not within the protection of section 504.

*Beauford,* 831 F.2d at 771; *see also Bento v. I.T.O. Corp.,* 599 F.Supp. 731, 742–43 (D.R.I.1984) (Selya, J.) (finding no violation of the Rehabilitation Act for failure to rehire a longshoreman who retired as totally disabled and later presented no evidence to his employer that he had fully recovered).

■ August did not renounce his statements on the insurance forms of total disability, nor has he pointed to facts which could raise any issue as to whether he was totally disabled during the period in question. Instead, he focuses on the harm allegedly done to him by Goldberg and Campbell at the May 11, 1989 meeting. He argues that his negative experience, resulting especially from their failure to state that they would accommodate him in the manner he had requested, caused him to relapse into depression, rendering him totally disabled. But for OUI's actions on May 11, August contends, he would or might have been able to return to work on May 22.[7]

We find no merit in this contention. August offers no legal authority to support his argument that the relevant date is not the date he was terminated, but a date two weeks prior. *See, e.g., Walker v. Attorney General of United States,* 572 F.Supp. 100, 102 (D.D.C.1983) (discussing whether plaintiff was, in fact, unable to perform his job "at the time he was terminated.") Nor is there any evidence that OUI had any plans to terminate August on May 11 or afterward. Even if May 11 were treated as the crucial date, August was not a qualified handicapped person on that day because he was, by his own admission, unable to return to work on May 11 with or without reasonable accommodation. Moreover, the

record contains nothing in the way of psychiatric or medical evidence to support counsel's bare assertion that the actions of OUI's employees at the May 11 meeting caused August to become totally disabled on May 12, whereas—had they spoken differently—he would have been able to return to work on May 22. Since August had the burden of proof on this issue, it was, of course, his obligation "to present definite, competent evidence" to prove the point and thereby avert summary judgment. *Mesnick,* 950 F.2d at 822.

■ Moreover, even if August could prove that OUI's attitude caused him further psychic injury on May 11, this would not establish a cause of action for discriminatory discharge on account of handicap in violation of Mass.Gen.L. ch. 151B. *See Langon v. Department of Health & Human Servs.,* 959 F.2d 1053, 1061–62 (D.C.Cir.1992) (establishing a causal connection between employer's failure to accommodate and plaintiff's poor job performance may support a claim for damages for harm caused, but does not establish a violation of the Rehabilitation Act). An employee's allegation that an employer caused him mental distress constitutes at most a claim of personal injury, actionable either as a tort, e.g., intentional infliction of emotional distress, or as a claim under the workmen's compensation statute.[8] Alleged violations of an employee's civil rights are distinguishable from personal injuries compensable under the Massachusetts workers' compensation act. *Foley v. Polaroid Corp.,* 381 Mass. 545, 413 N.E.2d 711, 714–15 (1980). August's status as a "qualified handicapped person" does not depend on the *cause* of his disability, but rather on the *extent* of his disability. The critical question is whether, in fact, he was

---

7. August also argues that OUI, after learning that he was totally disabled, had the duty to investigate and determine when he might return. Courts in similar cases have found no such duty. *See Cook v. United States Dep't of Labor,* 688 F.2d 669, 671 (9th Cir.1982), *cert. denied,* 464 U.S. 832, 104 S.Ct. 112, 78 L.Ed.2d 113 (1983); *Walker v. Attorney General of United States,* 572 F.Supp. 100, 102 (D.D.C.1983).

8. The district court dismissed August's claim for intentional infliction of emotional distress when it granted summary judgment. The court found no evidence of "extreme and outrageous conduct," and also ruled that the claim is barred by Massachusetts workers' compensation law. *See* Mass.Gen.L. ch. 152, § 26; *Foley v. Polaroid Corp.,* 381 Mass. 545, 413 N.E.2d 711, 714–15 (Mass.1980). August did not appeal from the court's dismissal of this claim.

able to perform the essential functions of his job with or without reasonable accommodation when he was fired.

Having conceded that he was totally disabled at all relevant times, August cannot now establish that he was a "qualified handicapped person" and thus cannot make the *prima facie* case required to prevail on his claim under Mass.Gen.L. ch. 151B, § 4(16). *See Conway v. Boston Edison Co.*, 745 F.Supp. 773, 781 (D.Mass.1990); *Mueller v. Corenco Corp.*, 13 M.D.L.R. 1146, 1153 (Mass.Comm'n Against Discrim.1991); *Silva v. Fairhaven Marine, Inc.*, 11 M.D.L.R. 1173, 1183 (Mass.Comm'n Against Discrim.1989). Summary judgment in favor of OUI was proper because there are no genuine issues of material fact as to whether August could have performed his job if his handicap had been accommodated. *See Chiari v. City of League City*, 920 F.2d 311, 319 (5th Cir. 1991); *Langon v. Department of Health & Human Servs.*, 749 F.Supp. 1, 7 (D.D.C. 1990); *see also Prewitt v. United States Postal Serv.*, 662 F.2d 292, 310 (5th Cir. Unit A Nov. 1981) ("To sustain [a] prima facie case, there should also be a facial showing or at least plausible reasons to believe that the handicap can be accommodated....").

This holding conforms with our decision in *Wynne v. Tufts Univ. School of Medicine*, 932 F.2d 19 (1st Cir.1991) (en banc). The district court in *Wynne* had ruled that Wynne, a medical school student, was not an "otherwise qualified handicapped individual" within the protection of the federal discrimination law because he was not able to meet his school's testing requirements. We vacated that judgment because a majority of the en banc court found insufficient evidence to determine whether, as a matter of law, the university had fulfilled its duty of reasonable accommodation to Wynne. *Id.* at 26. However, the majority explained that "[i]f the record were crystal clear that even if reasonable alternatives to written multiple-choice examinations were available, Wynne would have no chance of meeting Tuft's standards, we might be able to affirm...." *Id.* at 27. Unlike in Wynne's case, the record in August's case

is crystal clear. The crucial issue in *Wynne*, of course, was whether the accommodations requested were "reasonable" under the circumstances. *See Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992) (appeal after remand); *Wynne*, 932 F.2d at 27–28. Here, we have assumed *arguendo* that the accommodations requested by August were reasonable but still find that, even so, there was no material issue of fact concerning August's ability to perform the essential functions of his job.

The district court also granted summary judgment on the handicapped discrimination claim on the ground that OUI made all the required reasonable accommodations to August, and thus, as a matter of law, did not violate Mass.Gen.L. ch. 151B, § 4(16). Because we find that the district court's first ground for summary judgment was sufficient to support its decision, we need not consider the second ground. *See Mesnick*, 950 F.2d at 822 ("An appellate panel is not restricted to the district court's reasoning but can affirm on any independently sufficient ground.").

*Affirmed. Ordinary costs for appellee.*

PETTINE, Senior District Judge, dissenting:

This appeal presents a narrow procedural issue concerning the district court's grant of summary judgment. In reviewing summary judgment awards, as the majority notes, we " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' " *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990)). Stated another way, a summary judgment examination by a court is not a balancing exercise to determine "which party's evidence is more plentiful, or better credentialled, or stronger." *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Rather, a court must determine "whether the non-

movant's most favorable evidence and the most flattering inferences which can reasonably be drawn therefrom are sufficient to create any authentic question of material fact." *Id.* All of this means, in my view, that in the interests of justice, "close calls" in summary judgment motions must be resolved in favor of the nonmoving party. In the case at hand, I believe plaintiff-appellant August deserves this latitude, and thus I would reverse the district court's decision and remand the action for trial.

## I.

From the majority's vantage point, the principal question in this case is "whether or not there was at least a genuine issue of material fact that, if OUI made reasonable accommodation to August's handicap, he would have been able to perform his job." The majority answers this inquiry with a resounding "no." This conclusion is based in large part on August's own statements, as well as those of his psychiatrist and counsel, that he was totally and continuously disabled from late March 1989 onward. The majority points out, for example, that in August's first application for disability benefits with the Provident Life and Accident Insurance Company on May 12, 1989, he asserted that the dates of his "total disability" were March 24, 1989, "through continuing." An accompanying physician's form signed by August's psychiatrist, Dr. Wallace, similarly stated that August had a "total disability." The majority also observes that in all subsequent insurance forms in the record, August declared that he was totally disabled beginning in March 1989. In addition to these written assertions, the majority relies upon a statement made by August's counsel at a hearing in the district court, that as of May 22, 1989, August was not capable of returning to work.

All of this evidence, according to the majority, would lead any reasonable fact finder to conclude that August was not a "qualified handicapped person" within the meaning of Mass.Gen.L. ch. 151B, § 4(16). Thus, any requests by August for reasonable accommodations were meaningless, since they "could not have enabled one who was totally disabled and thus incapable of working either part-time or full-time, to do his job."

With all due respect, I believe the majority is putting the cart before the horse. The issue is not whether August was classified by his psychiatrist, and by himself, as totally disabled following the May 11, 1989, meeting at OUI. Rather, the key factual inquiry is whether the outcome of the May 11th meeting was determinative of this subsequent characterization of total disability. In other words, it is unresolved whether August could have returned to work had OUI *accommodated* his disability as per his May 11th requests.

August claims that he would have been able to return to work by the end of May if OUI had granted his requests to miss a few meetings and to work part-time. There is evidence in the record that in early May both of August's doctors considered him fit to return to OUI.[1] Dr. Vogel, his internist, stated in his deposition that after he examined August on May 10, 1989, he concluded that "because [August] was feeling better, I suggested he go back to work." August's psychiatrist, Dr. Wallace, wrote on May 3, 1989 that in his judgment August "will require another two to four weeks before complete recovery is achieved." Moreover, August himself stated in a deposition that he told OUI's representatives at the May 11th meeting: "I think I'm ready to come back to work. I'm feeling much better."

According to August, OUI's "denial of [his] requests to miss one or two early morning meetings and to work on a part-

---

1. The majority stresses that August did not present "definite, competent evidence" (citing *Mesnick,* 950 F.2d at 822) to prove that the actions of OUI at the May 11th meeting caused him to become totally disabled on May 12th. I believe, however, that the crucial issue is whether August offered tangible evidence that he might have been able to return to work if OUI had made reasonable accommodations to his handicap. In my view, there was sufficient evidence on this point to fend off summary judgment.

time basis constituted a failure to take steps to reasonably accommodate plaintiff's handicap." Plaintiff-Appellant's Brief at 10. Viewing the facts in the light most favorable to the plaintiff, these accommodations, if granted, could have enabled him to continue working notwithstanding his handicap. After all, the Massachusetts statute defines "qualified handicapped person" as one "who is capable of performing the essential elements of a particular job, *or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap."* Mass.Gen.L. ch. 151B, § 1(16) (emphasis added). To be sure, when OUI denied the May 11th requests, August was unable to immediately return to work. But this fact only demonstrates that, *absent* accommodations by OUI, August could not work. It does *not* prove that he would have been incapable of working had his requests been granted.

While "[e]mployers cannot be required to accommodate needs they do not know exist," *Conway v. Boston Edison Co.,* 745 F.Supp. 773, 783 (D.Mass.1990), the evidence in this case demonstrates that OUI was not only aware of August's handicap, but also of the accommodations necessary to facilitate his return to work. August should be entitled to have a fact finder hear the evidence and decide whether at the May 11th meeting he would have been capable of performing his essential job functions, had OUI made reasonable accommodations to his handicap.

Even accepting the logic of the majority, I believe they rely too heavily on August's characterization of himself as "totally disabled" in the aftermath of the May 11th meeting. For one thing, the disability insurance forms are not legally or medically precise. As the majority acknowledges, it is not clear how "total disability" is defined in August's insurance policy. The insurance forms simply describe "total disability" as an "inability to work." On its face, this definition would not preclude an individual from concurrently claiming "qualified handicapped person" status under Massachusetts (or federal) law. Further, it is logical that August took full advantage

of OUI's temporary disability benefits following the May 11th meeting. Indeed, August concedes that he was unable to work without some type of alternative arrangement from OUI. But again, this does not necessarily mean that August was "incapable" of working *even if* accommodations were provided by his employer.

## II.

Although not addressed in the majority's opinion, I also conclude that the district court erred when it found that OUI had reasonably accommodated August's handicap. For completeness, I wish to add a few thoughts on this issue.

OUI failed almost entirely to fulfill its statutory obligation to reasonably accommodate August's handicap. While OUI might have argued that the accommodations August sought placed an "undue hardship" upon the company, it declined to do so. Instead, OUI contends:

There is ... no authority to support the proposition that a statement by a totally disabled person that he intends to return to work at some unspecified time in the future when he is no longer disabled constitutes a request for a "reasonable accommodation." A request to be excused indefinitely from performing any and all of the functions of his job is not a request for a "reasonable accommodation."

Defendant-Appellee's Brief at 15. This argument is specious since the accommodations at issue are those which August had requested at the May 11th meeting, and which OUI rejected out-of-hand. The relevant accommodation is not August's resultant application for temporary disability benefits.

OUI's brief makes no mention of August's requests for absence from a few meetings and for temporary part-time status, or of its grounds for refusing to accommodate him. OUI also does not directly refute his claim that these issues were discussed on May 11th. Therefore, it was improper for the trial judge not to accept the unrefuted facts alleged by the nonmov-

ing party in a summary judgment motion. *See Blanchard v. Peerless, Ins. Co.,* 958 F.2d 483, 489 (1st Cir.1992). Without any evidence of the reasonableness or unreasonableness of August's May 11th requests, or the reasons for OUI's failure to accede to those requests, one simply cannot say as a matter of law that OUI reasonably accommodated August's handicap.

## III.

I recognize that August would face an uphill battle ahead of him at trial. To succeed on the merits, he would have to prove that: (1) he was a "qualified handicapped person" on May 11, 1989; (2) his requests to work part-time and to miss early morning meetings constituted "reasonable accommodations"; and (3) his inability to return to work was caused by his employer's wrongful refusal to grant these accommodations. Still, these are all questions of fact that should be determined at an evidentiary hearing, not on a summary judgment motion.

However hard I try, I cannot fathom the majority's conclusion that the record in this case is "crystal clear." In my view, this case presents genuine disputes over crucial factual matters. At a minimum, "[t]here is enough of a patina of uncertainty here as to the material facts to deflect the summary judgment axe." *Greenburg,* 835 F.2d at 937.

Because I believe this plaintiff deserves his day in court, I must respectfully dissent.