<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-2280

                      IVETTE SOTO-OCASIO,

                     Plaintiff, Appellant,

                               v.

                  FEDERAL EXPRESS CORPORATION,

                      Defendant, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Salvador E. Casellas, U.S. District Judge]
                                
                                
                                

                            Before
                                
                    Torruella, Chief Judge,
               Selya and Stahl, Circuit Judges.
                                
                                

    Federico Lora Lpez for appellant.
    Vivian Nuez, with whom Luis D. Ortiz Abreu and Goldman,
Antonetti & Cordova were on brief, for appellee.

July 16, 1998

                                
                                

 STAHL, Circuit Judge.  Plaintiff-appellant Ivette Soto
Ocasio ("Soto") appeals the district court's grant of summary
judgment to defendant Federal Express Corp. ("Federal Express" or
"the company").  Plaintiff had claimed that Federal Express failed
to provide a reasonable accommodation to her known physical
limitations, in violation of the Americans with Disabilities Act
("ADA" or "Act"), 42 U.S.C.  12101-12117, and Puerto Rico law.  
We affirm.
                               I.
 The following facts are undisputed.  In June 1988
plaintiff began working for Federal Express as a full-time
operations agent at its Borinquen Station Office ("BSO") in
Aguadilla, Puerto Rico.  The purpose of the operations agent
position as set forth in a job description dated March 11, 1988,
was to "perform routine administrative/clerical duties necessary
for efficient field operations."  These duties included entering
data into the company's computer, composing letters and memoranda,
reviewing reports for accuracy, ordering supplies, typing and
filing various forms and papers, processing bills, maintaining
personnel data, and auditing air bills.  Plaintiff was the only
operations agent in the Aguadilla office, although three customer
service agents and twenty-five couriers also worked there.
 To carry out her duties, plaintiff would arrive at work
at 6:00 a.m.  From 6:00 a.m. until 7:00 a.m., she would enter data
from employees' time cards into a computer.  She would then begin
her filing and ordering duties, as well as continue her data entry
duties, which required that she enter into a computer data from
each of the previous day's "hubs" left in a tray for her.  Hubs are
air bills which contain each customer's account number, the
sender's and recipient's names and addresses, and other pertinent
information.  On any given day, she would enter 80 to 375 hubs into
the system, a task which, on some days, required that she work
overtime, until 4:00 or 5:00 p.m., because company policy required
that hubs be entered by the end of the next business day.  During
the day, she would take a single one-hour break.
 On March 7, 1993, plaintiff was involved in a car
accident during non-working hours.  Her physician, Dr. Hiram Luigi,
diagnosed her as having a cervical sprain with myofacial pain,
which is pain due to damage in the muscles in the trapezius and
cervical areas of the body.  After exhausting her allotted sick
leave, plaintiff took additional leave pursuant to Federal
Express's short term disability plan, which allowed her to receive
benefits for an additional twenty-six weeks.  On September 9, 1993,
plaintiff applied for long-term disability benefits under Federal
Express's disability insurance policy.  Two months later, John
Hancock Mutual Life Insurance Company ("John Hancock"), Federal
Express's insurance carrier, approved the application.  
Subsequently, plaintiff suffered a period of depression and was
hospitalized from February 23 until March 13, 1994, at a
psychiatric hospital in San Juan.   
 On March 24, 1994, Dr. Luigi, who had last examined
plaintiff in mid-January 1994, filled out a medical release form at
plaintiff's request.  He did not reexamine plaintiff prior to
signing the release, on which he wrote the words, "patient light
duty."  Because Federal Express's BSO operations manager, George
Franqui, was on vacation at the time, plaintiff submitted the
medical certificate to senior manager Craig Connors, who rejected
the certificate and refused to permit her to return to work,
expressing doubts about the meaning of "light duty."  On April 4,
plaintiff obtained a second release (again without an examination)
from Dr. Luigi, this one describing her limitations as follows:
"Work 2 hours and rest 10 minutes.  Cannot lift more than 7 pounds.  
Patient must be in treatment."  In his deposition, Dr. Luigi
testified that, at the time he completed the second release, he did
not know the nature of plaintiff's occupation.  Plaintiff presented
the second certificate to Franqui, who accepted it and told her
that he would give her a work schedule.  

 Notwithstanding his initial receptiveness, Franqui stated
in a letter to plaintiff, dated May 10, that she would not be
allowed to return to work until she had obtained medical
certification that she was able "to resume all of [her]
responsibilities" and "to work without restrictions."  He further
stated that "[i]n order to maintain operational efficiency and
service to our customers it is necessary that I take steps to
replace you in your position."  In regard to the decision to
replace plaintiff, Franqui testified that  
 I initially thought that she would be able to
 return back to work, after consulting with
 Personnel.  We wanted to have more specific
 information of her restrictions.  So I
 initially did tell her that I was going to
 give her a work schedule but it was just until
 we could get a [sic] feedback from our doctor.  
 Based on the medical leave of absence policy
 for anybody who has been out for an extended
 period of time before reinstating that person
 we have to send them, that person, to be seen
 by one of our doctors.
There is no evidence, however, that, prior to May 10, Federal
Express raised its concerns about plaintiff's medical release forms
either to Dr. Luigi or to its own medical personnel.   
 Plaintiff responded to Franqui's letter on May 12,
expressing willingness to be examined by a physician designated by
Federal Express, and requesting reasonable accommodation.  She also
sought permission to participate in Federal Express's "Temporary
Return to Work" ("TRW") program, and an evaluation of her case by
the company's Human Capital Management ("HCM") Committee.  A month
later, on June 14, Connors asked Dr. Leonel Shub to examine
plaintiff "to determine if she is physically able to return to her
full duties in Federal Express."  After the examination, Dr. Shub
reported to Connors that, in his opinion, plaintiff was "not
physically capable of performing the essential functions of her job
given her present condition."  He stated that her condition did not
permit her to lift, push, or pull more than ten pounds; sit or
stand for more than 45 minutes at a time; climb stairs
repetitively; perform jobs that require cervical flexion   "the
motion of chin to chest"   "of more than 25 for more than 30
consecutive minutes;" or elevate her hands above her shoulders.  
He concluded that "[s]hould there exist a reasonable accomodation
[sic] which complies with these restrictions, it is recommended
that she return to work on a gradual basis starting with a 4 hours
[sic] part time job."  Federal Express did not provide a copy of
the report to plaintiff or discuss it with her.  Based on the
restrictions that Dr. Shub outlined, Franqui, Connors, and senior
personnel representative Lynn Busler decided not to reinstate
plaintiff and instead referred plaintiff's case to the HCM
Committee as plaintiff had requested.  The three decisionmakers
disregarded plaintiff's request to participate in the TRW program,
purportedly on the basis that it was not available to Puerto Rico
employees.  Meanwhile, on June 24, 1994, plaintiff filed a charge
of employment discrimination under the ADA with the Equal
Employment Opportunity Commission.  
    The HCM Committee met on August 31, 1994, and, in a
memorandum to Franqui, stated that it required "additional medical
information regarding the date Ms. Soto will be fully released to
return to work."  It thus instructed Franqui to contact Dr. Shub
for this information, stating that, in the event that Dr. Shub
needed to reexamine plaintiff, Franqui should have plaintiff set up
an appointment with Dr. Shub for that purpose.  Finally, the
committee determined that if plaintiff would be able to return to
work within 90 days, she should do so under the TRW program.  The
record is unclear as to whether Franqui contacted Dr. Shub as
instructed; however, on October 23, 1994, Eric Hernandez, who had
replaced Franqui as operations manager, sent a memorandum to
plaintiff stating that the HCM Committee had requested additional
information about her condition and instructing her to contact Dr.
Shub for an appointment.   
    By the time Hernandez sent the memorandum, plaintiff had
been involved in two more car accidents, which had worsened her
physical condition and caused a recurrence of her depression, for
which she had been rehospitalized until October 10, 1994.  She did
not revisit Dr. Shub for the requested second examination.  
Furthermore, in September 1994, on the advice of John Hancock,
plaintiff had filed a claim with the Social Security Administration
("SSA"), which on October 15, 1994, informed her that she was
entitled to Social Security disability benefits beginning August
1994.  The SSA further informed plaintiff that it had been
"determined that [her] period of disability began February 23,
1994," the date "[her] condition first prevented [her] from doing
substantial gainful work."  Franqui testified that plaintiff's
position had been vacant since March 1993 and that the work load
had "been distributed among 4 or 5" Federal Express employees.
    On September 26, 1995, plaintiff sued Federal Express
under the ADA and Puerto Rico antidiscrimination laws.  Following
completion of discovery, the court granted Federal Express's motion
for summary judgment, determining that plaintiff had failed to meet
her burden of showing that she was a "qualified individual with a
disability" under the ADA.  The court also dismissed, without
prejudice, plaintiff's claims under Puerto Rico law.  Plaintiff
appeals.  
                              II.
    We review a grant of summary judgment de novo, viewing
the record in a light most favorable to the non-moving party and
"indulging all reasonable inferences in that party's favor."  
Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  
Although entry of summary judgment may be upheld only if the record
"show[s] that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of law,"
id., the party seeking to avoid summary judgment "must be able to
point to specific, competent evidence to support his claim," Augustv. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992).  
"Mere allegations, or conjecture unsupported in the record, are
insufficient to raise a genuine issue of material fact."  Id.   
    The ADA prohibits an employer from discriminating against
"a qualified individual with a disability because of the disability
of such individual."  42 U.S.C.  12112.  In addition to
prohibiting adverse employment decisions, such as termination or
denial of benefits, when such decisions are based on a qualified
individual's actual or perceived disability, see id.  12112(a),
12112(b)(3) & (4), the Act also prohibits an employer from failing
to make "reasonable accommodations to the known physical or mental
limitations of an otherwise qualified individual with a
disability," id.  12112(b)(5)(A).   
    To establish a claim under the ADA, a plaintiff must
prove by a preponderance of the evidence (1) that she was disabled
within the meaning of the ADA; (2) that she was able to perform,
with or without reasonable accommodation, the essential functions
of her job; and (3) that the adverse employment decision was based
in whole or in part on her disability.  See E.E.O.C. v. Amego,
Inc., 110 F.3d 135, 141 n.2 (1st Cir. 1997); Jacques v. Clean-Up
Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996).  The second
requirement   that a plaintiff be "qualified"   itself involves a
two-part inquiry: the plaintiff must demonstrate both that she
satisfies the prerequisites for the position, that is, that she has
the proper training, skills, and experience, and that she could
perform the essential functions of her job, either with or without
reasonable accommodation.  See 29 C.F.R.  1630.2(m).  
    In this case, plaintiff and Federal Express do not
dispute that, during the relevant period of time, plaintiff was a
disabled person within the meaning of the ADA, that she satisfied
the prerequisites for the position of operations agent, and that
data entry and other clerical functions are the essential functions
of that position.  They do, however, dispute whether plaintiff has
demonstrated that there exists a genuine issue of material fact as
to whether, at the time that she requested to return to work, she
could perform the essential functions of her job.  Our evaluation
of the record persuades us that she has not.
    It is plaintiff's burden to prove that, at the time she
sought to resume her job, she had the ability to perform the
essential functions of an operations agent.  Yet she has presented
no "specific, competent evidence" to that effect, other than the
pro forma medical releases she received from Dr. Luigi.  Instead,
she has concentrated on the argument that Federal Express also had
an ADA-imposed burden: to be responsive to plaintiff's request for
reasonable accommodation.  She asserts that a trial is required to
determine whether the company satisfied this burden when it
rejected "out of hand" plaintiff's request for reasonable
accommodation and did not "engage in meaningful discussion on the
subject."   
    Plaintiff doubtless draws from the ADA's interpretive
regulations, which state that determining an appropriate reasonable
accommodation may require an employer "to initiate an informal,
interactive process" with the individual seeking accommodation.  29
C.F.R.  1630.2(o)(3).  Indeed, we have held that "[t]here may well
be situations in which the employer's failure to engage in an
informal interactive process would constitute a failure to provide
reasonable accommodation that amounts to a violation of the ADA."  
Jacques, 96 F.3d at 515.  In so doing, we have cautioned that
"cases involving reasonable accommodation turn heavily upon their
facts and an appraisal of the reasonableness of the parties'
behavior."  Id.
    But in this case, plaintiff's assertion that Federal
Express failed to engage in "meaningful" interaction with plaintiff
regarding reasonable accommodation is of no moment   or, more
precisely, it puts the cart well before the horse   because no
reasonable trier of fact could have found, on this record, that
plaintiff was capable of performing the duties of operations agent,
with or without reasonable accommodation.  At the times that
plaintiff sought to return to work, in March and April 1994, she
continued to receive long-term disability benefits.  To be eligible
to receive those payments, plaintiff was required to represent to
John Hancock that she met the definition of "total disability,"
which, as described in a letter, dated December 8, 1993, to
plaintiff from a John Hancock disability claims analyst, is "the
inability because of a physical impairment, to engage in any
substantially gainful activity for which [the claimant is]
reasonably qualified (or could become reasonably qualified) on the
basis of [the claimant's] education, training, or experience."  In
addition, on July 27, 1994, Dr. Luigi submitted to John Hancock, in
response to its request that he update her condition, a completed
"attending physician's report," presumably based on his examination
of plaintiff on July 20   a date after plaintiff had represented to
Federal Express that she was able to return to work.  In the
report, Dr. Luigi stated that plaintiff "needs disability at this
moment; cannot work; still in medical care."     
    We have addressed in a prior case whether a disabled
individual's representations (or those of her treating physician)
regarding the extent of his or her disability, made in connection
with an application for total disability benefits that extended
through the point at which he or she sought to return to work, may
have a preclusive effect on the individual's attempt to establish
that he or she is qualified within the meaning of the ADA.  SeeAugust, 981 F.2d at 580-83.  In August, we determined that the
plaintiff's application for total disability insurance, the
benefits of which continued through the point at which he requested
reinstatement, in combination with the fact that he had not
demonstrated that he was capable of performing any work (even with
a requested accommodation), eliminated any genuine issue as to his
ability to work with reasonable accommodation.  See id.; see alsoD'Aprile v. Fleet Servs. Corp., 92 F.3d 1, 5 (1st Cir. 1996)
(describing the holding in August).  We did, however, indicate
that, had the plaintiff "pointed to facts which could raise any
issue as to whether he was totally disabled during the period in
question," August, 981 F.2d at 583, he might have been able to
establish a genuine issue as to his ability to perform the
essential functions of his job.   
    The Seventh Circuit has similarly determined that,
although a plaintiff "might have been deemed disabled under some
other statutory or contractual framework," the plaintiff may
counter any presumption that he or she is not a "qualified
individual" by presenting "additional evidence that shows she could
perform the essential duties of a desired position with or without
reasonable accommodation."  Weigel v. Target Stores, 122 F.3d 461,
468 (7th Cir. 1997).  The panel concluded that "absent some such
affirmative showing of the plaintiff's ability to perform the
essential functions of the position, there will be no genuine issue
of material fact as to whether the plaintiff is a 'qualified
individual' and the employer will be entitled to judgment as a
matter of law."  Id.  In other words, if an ADA plaintiff was
receiving, during the time she claims to have been denied
reasonable accommodation, total disability benefits that were
predicated on her inability to perform the job, then, to defeat a
motion for summary judgment, she must make some type of showing
that she was in fact able to perform the essential functions of her
job during the time in question.  We think this reasoning is sound.
    The record is bereft of any support for Soto's assertion
that, at the relevant points in time, she was able to perform the
essential functions of her position with reasonable accommodation.  
The evidence demonstrates only that plaintiff gave her supervisors
two medical releases from Dr. Luigi: one appeared to state that her
duties should be "light," and the other set forth a very sketchy
list of requirements accompanied by a statement that plaintiff was
still in need of medical treatment.  Plaintiff presents no evidence
to counter either Dr. Luigi's testimony that, at the times in
question, plaintiff could probably not sit at a computer for more
than thirty minutes, or Dr. Shub's testimony that data entry
requires "continuous" cervical flexion, substantially more than the
1.25 times per minute permitted by her condition.
    To be sure, the term "reasonable accommodation" may
include "job restructuring [and] part-time or modified work
schedules."  42 U.S.C.  12111(9)(B).  However, the ADA does not
require an employer "to reallocate job duties in order to change
the essential function of a job."  Milton v. Scrivner, Inc., 53
F.3d 1118, 1124 (10th Cir. 1995); see Cockrum v. Old Ben Coal Co.,
102 F.3d 908, 913 (7th Cir. 1996) ("[R]easonable accommodation does
not encompass reallocation of essential job functions."); Fussellv. Georgia Ports Auth., 906 F. Supp. 1561, 1571 (S.D. Ga. 1995)
("The law is clear that reallocation of job duties constitutes a
change in the essential functions of [the employee's] job and
[therefore] is not required under the ADA." (internal quotation
marks omitted)), aff'd, 106 F.3d 417 (11th Cir. 1997).  But
reallocating duties is precisely what Federal Express would have
had to do in order to comply with plaintiff's request.  Plaintiff's
job required her to enter substantial amounts of data into a
computer, which, according to plaintiff's own deposition testimony,
required up to six to nine hours in a day.  The time-sensitive
nature of plaintiff's work meant that if plaintiff could not enter
all of the data, the company would have had to allocate other
employees to complete the work.  Because reallocation of job
functions exceeds the scope of reasonable accommodation, it follows
that Federal Express was not required under the ADA to permit
plaintiff to resume her job.

    Because we find that plaintiff failed to adduce evidence
that she was a qualified individual with a disability within the
meaning of the ADA, the district court's order granting summary
judgment to defendant is affirmed.  Costs to appellee.

</body>

</html>