Patricia LANGON, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
Defendant.**

Civ. A. Nos. 85–2376 SSH, CA
86–2152 SSH.

United States District Court,
District of Columbia.

Aug. 22, 1990.

Constance L. Belfiore, University Park, Md., Margaret H. Warner, William J. Carter, Washington, D.C., for plaintiff.

Richard N. Reback, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment and on

defendant's cross-motion for summary judgment. Upon consideration of the motions, the oppositions thereto, and the entire record herein, defendant's motion is granted and plaintiff's motion is denied.

## Background

In December 1979, the U.S. Department of Health, Education and Welfare ("HEW") hired plaintiff Patricia Langon as a Computer Program Analyst at GS level 11. HEW was the predecessor agency of defendant U.S. Department of Health and Human Services ("HHS"). Plaintiff, who has multiple sclerosis, was hired pursuant to an affirmative action program for handicapped individuals.

Shortly after being hired, plaintiff began to inquire about the possibility of her promotion to GS level 12, and in December 1981, she requested a written explanation as to why she was not granted a promotion. Meanwhile, in July 1981, plaintiff had made the first of many requests that she be permitted to work at home. She alleged that her illness progressively had worsened to the point at which it prevented her from commuting to work without endangering her health. Plaintiff claimed that she could maintain her satisfactory standard of performance and could continue to accomplish her work assignments in a timely manner, were defendant to install the equipment necessary for her to do her work in her home.

Defendant did not grant either of plaintiff's requests, and notified her of the reasons for its denials. As to plaintiff's non-promotion, defendant stated that plaintiff had not met the criteria necessary for promotion to GS level 12. In addition, defendant explained that it could not allow plaintiff to work at home because it did not have a policy on work done at home, and because her work required exactness, involved short deadlines, and required face-to-face contact with program requestors.

On October 14, 1981, HHS issued a policy regarding compensation for work done at home. While the policy generally prohibited work done at home, it authorized exceptions to this policy for "[s]everely handicapped persons for whom it would be difficult to commute to the work site."

In February 1982, plaintiff filed with defendant a formal complaint of handicapped discrimination for her failure to receive a career ladder promotion and for defendant's refusal to accomodate her handicap. Plaintiff had received satisfactory performance ratings from the date of her hiring through September 1981. Her performance level subsequently began to deteriorate, and on June 7, 1982, plaintiff received notification that her employment would be terminated according to Federal Personnel Regulations, should her performance fail to improve. On September 17, 1982, plaintiff's supervisor informed plaintiff of his proposal to terminate her for her failure to satisfy the critical elements required by her position. HHS formally terminated plaintiff for unacceptable performance on January 14, 1983.

On March 31, 1983, plaintiff filed with defendant another complaint of handicapped discrimination with regard to her termination. On December 23, 1983, defendant issued a proposed disposition of plaintiff's claims of discrimination with regard to her non-promotion and refused accommodation. Defendant adopted the proposed disposition, which found no discrimination, as its final decision on February 15, 1984. Plaintiff appealed that decision to the Equal Employment Opportunity Commission ("EEOC") on March 13, 1984. The EEOC issued its affirmance of defendant's decision early in 1986.

On August 17, 1984, defendant issued a decision finding no discrimination as to plaintiff's termination complaint. Plaintiff then sought review by the Merit Systems Protection Board ("MSPB") of HHS's decision, according to MSPB Regulation § 1201. The MSPB issued a decision on February 1, 1985, concurring with defendant's decision that plaintiff's termination had not been motivated by discrimination. On May 28, 1985, the MSPB issued a final order denying plaintiff's petition for review of its February 1 decision, and adopting the initial decision as its final decision.

4

Pursuant to 29 U.S.C. § 794a(a)(1) and 5 U.S.C. § 7703, plaintiff filed an action in this Court on June 27, 1985, seeking judicial review of the MSPB's disposition of her discrimination complaints. Once the EEOC issued its decision affirming HHS's disposition of plaintiff's non-promotion and denied accommodation claims, plaintiff filed a second action on August 6, 1986, seeking review of the EEOC's decision. Because of the close relationship between the two actions, the Court consolidated them on January 8, 1987.

## Standard of Review

■■■ The Court must exercise *de novo* review of the administrative record with regard to plaintiff's non-promotion and denied accommodation claims to determine whether they were based on handicapped discrimination. *Hayes v. U.S. Gov't Printing Office*, 684 F.2d 137, 139 (D.C.Cir.1982); *Prewitt v. U.S. Postal Service*, 662 F.2d 292, 303 (5th Cir. Unit A Nov. 1981) (*citing Chandler v. Roudebush*, 425 U.S. 840, 863–64, 96 S.Ct. 1949, 1960–61, 48 L.Ed.2d 416 (1976)).

However, because plaintiff's claim of discrimination with regard to her termination is technically a "mixed case" according to 5 U.S.C. § 7702, the Court's review of this claim is bifurcated. That is, the Court must exercise *de novo* review of the administrative record with regard to plaintiff's claim that her termination was motivated by handicapped discrimination, yet scrutinize HHS's decision to terminate plaintiff for poor performance by a rational basis review of the agency's decision.[1] *Wiggins v. U.S. Postal Service*, 653 F.2d 219, 222 (5th Cir. Unit A Aug. 1981).

Pursuant to Federal Rule of Civil Procedure 56(c), the Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The element essential to plaintiff's case is the severity of her illness and the extent to which it impaired her ability to commute to work. Plaintiff has failed to meet her burden of proof with regard to this element, and, accordingly, the Court enters summary judgment against her.

## Discussion

■■■ Plaintiff's three claims of handicapped discrimination are best dealt with individually. First, in order for plaintiff to establish a prima facie case of handicapped discrimination in violation of 29 U.S.C. § 791 *et seq.* ("Rehabilitation Act"), with regard to HHS's denial of accommodation for her handicap, plaintiff must demonstrate that she was an "otherwise qualified handicapped individual." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Prewitt*, 662 F.2d at 309–10; *Walker v. Attorney Gen. of the United States*, 572 F.Supp. 100, 102 (D.D.C.1983). If plaintiff was not an otherwise qualified handicapped individual, there could not have been discrimination in violation of the Rehabilitation Act. *Walker*, 572 F.Supp. at 102–03. An "otherwise qualified handicapped individual" is defined in 29 U.S.C. § 791 *et seq.* and 29 C.F.R. § 1613.702(f), as well as in the relevant case law. Once a plaintiff has fulfilled this requirement, the

---

1. In fact, plaintiff admits that she did not perform her duties satisfactorily after September 1981, and claims that this failure was due to her worsened illness and her preoccupation with the filing of her February 1982 complaints. Thus, she does not contend that defendant's decision to terminate her was irrational given the objective criteria upon which her performance was evaluated. However, plaintiff does contend that defendant's refusal to accommodate her handicap, and defendant's refusal to consider the limitations imposed by her handicap when evaluating her performance after Sep-

tember 1981, constitute handicapped discrimination. Plaintiff therefore sought review by the MSPB of defendant's decision to terminate her, sought appeal of the MSPB's decision affirming defendant's decision, and seeks judicial review of these dispositions. Because this is primarily a discrimination claim rather than a contention about the rationality of the termination, the Court finds that it essentially must exercise *de novo* review of the record with regard to plaintiff's termination, and only secondarily exercise rational basis review of the defendant agency's decision to dismiss plaintiff.

burden of proof shifts to the defendant to show that the justifications offered for its refusal to accommodate plaintiff are "job related." *Prewitt*, 662 F.2d at 310. The defendant must further demonstrate that to make the accommodation would impose an "undue hardship" on its operations. *Id.;* 29 C.F.R. § 1613.704(a). If defendant satisfies this burden, plaintiff must then rebut defendant's evidence by showing that accommodation of the handicap imposes no such "undue hardship" upon defendant agency. *Prewitt*, 662 F.2d at 310.

■ There is no dispute that plaintiff was a "handicapped individual" as defined in 29 U.S.C. § 706(8) of the Rehabilitation Act. Indeed, plaintiff was hired pursuant to an affirmative action program for the handicapped, and her employer at that time, HEW, knew of her multiple sclerosis. Plaintiff also met the experiential and/or educational requirements of the position for which she was hired.

Section 794 of the Rehabilitation Act prohibits discrimination on the basis of handicap against an "otherwise qualified individual," as defined in § 706(8). 29 U.S.C. § 794.

With respect to employment, 29 C.F.R. § 1613.702(f) defines a "qualified handicapped individual" as one who "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who ... [m]eets the experience and/or education requirements ... of the position in question." 29 C.F.R. § 1613.702(f).

■ In *Davis*, the Supreme Court stated restrictively that the Rehabilitation Act protects only those individuals who are qualified for their positions "in spite of" their handicaps. *Davis*, 442 U.S. at 406, 99 S.Ct. at 2367. Reading the statutory, regulatory, and judicial interpretations of the term "otherwise qualified handicapped individual" together suggests that establishing a prima facie case of handicapped discrimination depends on whether the plaintiff, "with or without reasonable accommodation," was able to "perform the essential functions" of her job "without endangering [her] health and safety." 29 C.F.R. § 1613.702(f).

It is clear from plaintiff's history of satisfactory performance ratings through September 1981 that she was able to perform the critical functions of her position during that time period. The Court further notes that between the date of her being hired and September 1981, plaintiff apparently required no accommodation for her handicap. The description of plaintiff's primary duties contained in her job performance evaluation of June 7, 1982, indicates that plaintiff then could fulfill the "essential functions" of her position from any computer terminal which is part of defendant's computer system, regardless of its location. Thus, regardless of where plaintiff's computer terminal was located, she was capable, without any accommodation, of "perform[ing] the essential functions of [her] position," despite her handicap, through September 1981.

As plaintiff's illness allegedly worsened, she claimed she was no longer able to commute to defendant's offices without endangering her health. She requested that defendant provide her with the equipment necessary to work at home, so that she might continue to fulfill the duties of her position. Relying on the Rehabilitation Act, plaintiff claimed then, as she does now, that defendant had a duty to make this accommodation for her handicap.

While defendant refused her permission to work at home, it did offer her several accommodations aimed at making her more comfortable within its offices, in accordance with the guidelines set forth in 29 C.F.R. § 1613.704(b). Specifically, defendant offered plaintiff a workstation relocation to a less noisy and less frequently trafficked area, flexible work scheduling, and frequent rest periods spent in the nurse's station. Plaintiff accepted and utilized these accommodations, yet repeatedly claimed that the only appropriate accommodation for her handicap was the elimination of her commute to work.

Plaintiff claims that as of July 1981, she was no longer able to perform the essential functions of her position "without reasonable accommodation," without endangering her health. She further alleges that as of July 1981, she was unable to perform the critical elements of her position by utilizing the accommodations offered to her by defendant. She argues that those accommodations were not reasonable because they did not adequately address the severity of her symptoms. Therefore, it is necessary to determine whether plaintiff was able to perform the essential functions of her position "with ... reasonable accommodation." Plaintiff's otherwise "qualified handicapped individual" status thus hinges on the reasonableness of the accommodation offered to her. The reasonableness of the accommodation in turn depends on the extent to which her illness limited her ability to travel to defendant's offices in order to do her work.

■ Government agencies are required to "make reasonable accommodation to the known physical or mental limitations of a qualified handicapped ... employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of the program." 29 C.F.R. § 1613.704(a). This indicates that an agency should accommodate a qualified handicapped individual's handicap based on what is known about the individual's handicapping condition and the individual's particular needs. Plaintiff claims that the type of accommodations offered her did not address the symptom of her illness which prevented her from accomplishing her duties, namely, fatigue occasioned by traveling to work. However, plaintiff failed to substantiate with medical evidence her alleged inability to commute, the alleged worsening of her illness, and her claim that the only reasonable accommodation in her case was permission to work at home.

Instead, plaintiff relied on cursory descriptions of her multiple sclerosis and doc-

tors' recommendations that she be allowed to work at home. Defendant requested medical information from plaintiff for the purpose of determining the extent to which her handicap hampered her job performance and ability to commute to work. Plaintiff has provided no medical records in support of her claims, and indeed twice inhibited the collection of medical information about her condition. She withdrew her consent to have her physician provide medical records and a detailed description of her symptoms and their remedies to defendant. She also refused to undergo a fitness-for-duty physical examination requested by defendant. Thus, the Court has to conclude that plaintiff frustrated defendant's efforts to learn about her circumstances in order to attempt to better accommodate her, and that plaintiff could not substantiate her claims with medical evidence prior to her termination. Based on the absence of meaningful medical information provided to defendant, the Court concludes that defendant satisfied its duties to make reasonable accommodation to plaintiff's known physical limitations pursuant to 29 C.F.R. § 1613.704(a).

Because plaintiff did not show that she could perform the essential functions of her position without endangering her health, even with reasonable accommodation as provided by defendant, and because plaintiff did not show that her requested accommodation was the only reasonable accommodation which would enable her to perform her duties, plaintiff has not demonstrated that she was an "otherwise qualified handicapped individual" for the purposes of establishing a prima facie case of handicapped discrimination.[2] Because plaintiff cannot "make a showing sufficient to establish the existence of an element essential to [her] case," *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, namely, that her condition rendered her unable to commute to work, the Court denies plaintiff summary judgment.[3]

---

**2.** The fact that defendant did offer plaintiff accommodations is not dispositive of her status as a "qualified handicapped individual," but seems to have been an effort to retain a valuable

employee by making some alterations in defendant's operations.

**3.** Had plaintiff demonstrated that she was an "otherwise qualified handicapped individual,"

■ Similarly, in order for plaintiff to establish a prima facie case of handicapped discrimination with regard to her non-promotion, she must demonstrate that she was a handicapped individual qualified for the position in spite of her handicap, and that she was denied the position solely because of her handicap. *Pushkin v. Regents of the Univ. of Colorado*, 658 F.2d 1372 (10th Cir.1981); *Hurst v. U.S. Postal Service*, 653 F.Supp. 259 (N.D.Ga.1986); *Guerriero v. Schultz*, 557 F.Supp. 511 (D.D.C.1983). As discussed above, plaintiff has not demonstrated that she was an otherwise qualified handicapped individual capable of performing her computer programming duties at GS level 11. Plaintiff has likewise failed to show that she was capable of satisfying the computer programming requirements at GS level 12. "[I]f the individual is not otherwise qualified, he cannot be said to have been rejected solely because of his handicap." *Pushkin*, 658 F.2d at 1385. Plaintiff did not satisfy the experiential requirements of the GS level 12 position at any time before her dismissal in September 1983, nor has she even argued that she could have done so with reasonable accommodation.

Furthermore, plaintiff has not demonstrated that she was denied the position solely because of her handicap. HHS utilizes an objective evaluation system in accordance with Federal Personnel Regulations for assessing employees' job performance and potential for promotion. Plaintiff's performance evaluations indicate that at all points during her tenure at HHS, she failed to meet the standard criteria required for promotion to GS level 12. Therefore, plaintiff cannot establish either element of a prima facie case of handicapped discrimination with regard to her non-promotion.

■ Because plaintiff has failed to meet her burden of proof with regard to the above claims of discrimination, it is impossible for her to sustain the burden of proof necessary to show that she was terminated because of her handicap. To establish a prima facie case of discrimination with regard to her termination, plaintiff must again demonstrate that she was an "otherwise qualified handicapped individual," and that she was terminated because of her handicap. *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir.1987). Plaintiff has not fulfilled the former requirement, nor can she satisfy the latter. Plaintiff's performance level deteriorated to an unacceptable level during 1981. Her supervisors notified her of this deterioration, and

she would have triggered defendant's duty to make reasonable accommodation for her handicap, unless defendant "[could] demonstrate that the accommodation would impose an undue hardship on the operation of its program." 29 C.F.R. § 1613.704(a). Defendant apparently could not show that it had fulfilled such a duty, were it to have existed, because it appears that the accommodation requested by plaintiff would not have "impose[d] an undue hardship" upon its operations.

Title 29 C.F.R. § 1613.704(c) provides that the factors to be considered in making a determination of undue burden include:

(1) The overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.

Defendant's justifications for denying plaintiff permission to work at home revolved around its type of agency operation and the nature of plaintiff's work. Specifically, defendant claims that plaintiff must have been able to do her work within its offices because of the "exact-

ness," "short deadlines," and "face-to-face contact" required of her work. Defendant's policy regarding work done at home, issued on October 14, 1981, while defendant employed plaintiff, clearly indicates that defendant envisioned scenarios in which handicapped individuals would be permitted to work at home. Defendant's policy states that it authorizes exceptions to its general prohibition against work done at home in cases where travel to work would be difficult for a "[s]everely handicapped person[ ]." Thus, allowing certain handicapped individuals to work at home would not have caused defendant "undue hardship." Had plaintiff shown by producing medical evidence that she was a "[s]everely handicapped person[ ]" for whom commuting to work was difficult, she could more easily have claimed entitlement to work at home. Additionally, defendant would have had more difficulty demonstrating the "undue hardship" occasioned by granting plaintiff's requested accommodation.

However, plaintiff failed to show that she was a "qualified handicapped individual," and thus defendant was under no corresponding duty to make reasonable accommodation for her handicap.

**8**

of what she needed to accomplish in order to improve her performance rating. Plaintiff's supervisors also informed her of their intentions to terminate her employment should her performance fail to improve. HHS operated at all times in accordance with approved Federal Personnel Regulations providing for an employee's removal for unsatisfactory performance.

Plaintiff claims that her inability to perform her duties satisfactorily was due to HHS's refusal to accommodate her handicap. *See* note 1. Yet as discussed above, plaintiff has not met the burden of proof necessary to show that her impairment necessitated the refused accommodation. Because plaintiff has not substantiated her former claims of discrimination, she has not established a prima facie case of handicapped discrimination with regard to her employment termination. Moreover, when the administrative record is reviewed under the rational basis standard with regard to defendant agency's termination decision, it is apparent that defendant agency's decision was entirely rational.[4]

4. Plaintiff filed her two complaints *pro se*. The Court expresses its deep appreciation to Constance Belfiore, Esq., who, at the Court's request, undertook the representation of plaintiff on a *pro bono* basis, and to Margaret H. War-

ner, Esq., and Mary T. Koelbel, Esq., who later entered the case to assist Ms. Belfiore. Together they afforded excellent representation to plaintiff.