Beverly A. WHITBECK, Plaintiff,

v.

VITAL SIGNS, INC., Defendant.

Civ. No. 95–1011 (SSH/PJA).

United States District Court, District of Columbia.

Aug. 2, 1996.

Vicki G. Golden, Washington, DC, for Plaintiff.

Harold R. Weinrich, Washington, DC, Vincent A. Cino, Morristown, NJ, for Defendant.

## MEMORANDUM OPINION

ATTRIDGE, United States Magistrate Judge.

In this diversity action, the plaintiff Beverly A. Whitbeck, seeks money damages from her former employer, Vital Signs, Inc., claiming violations of the District of Columbia Human Rights Act, D.C.Code § 1–2556. Pending before the Court is Vital Signs' motion for summary judgment. The parties, pursuant to 28 U.S.C. § 636(c), have consented to proceed before a United States Magistrate Judge. Upon consideration of the motion, the opposition, reply and the entire record, the Court concludes that the motion should be granted.

## I. Background

This litigation involves the allegation · of defendant's failure to reasonably accommodate the plaintiff's disability. The following material facts are undisputed.

Ms. Beverly A. Whitbeck ("Whitbeck") was hired by Vital Signs on September 7, 1992 after a merger between her former employer and Vital · Signs. She was hired as a Sales Representative at an annual compensation of $84,000. The plaintiff was diagnosed soon thereafter with spinal cord astrocytoma (a tumor in her spinal cord). Accordingly, she was unable· to work due to required neurosurgery, a long hospitalization and recovery from February to July 1993. During this time her employer continued to pay Ms. Whitbeck her full salary. From ·July 1993 to April 1994, Ms. Whitbeck was only able to work.at a reduced work load, but continued to receive her salary.

On April 15, 1994, Ms. Whitbeck had a routine visit with her neurologist George Kattah. Dr. Kattah advised her "that the tumor was regrowing and that she probably would not improve any further." Def.'s 108(h) St. at 21 (admitted). At that visit, Dr. Kattah suggested that she look into the use of an Amigo cart, (an automated cart), to assist her on her sales calls.[1] The next day, on April 16, 1994, Dr. Kattah filed out a disability certification form for Royal Maccabees Insurance Company ("Maccabees") indicating that Ms. Whitbeck was "totally disabled." Def.'s and Pl.'s 108(h) St. at 23.

Ms. Whitbeck had applied for disability (at first residual disability and then in April 1994 for total disability) from Maccabees in the fall of 1993 and payments started in January 1994. Pl.'s Opp'n at 13. She continues to collect $2100.00 a month from Maccabees. Def.'s 108(h) St. at 24 (admitted). Moreover, it was required by Maccabees, and through their instruction, she applied for Social Security benefits.

In August of 1994, three months before she was terminated and three months after she started receiving payments from Maccabees, Ms. Whitbeck applied for Social Securi-

---

1. As the date of the filing of these pleadings, Ms. Whitbeck never purchased an Amigo cart and is able to walk with a cane or with no assistive device. Def.'s 108(h) St. at ¶ 36 (admitted).

ty benefits. Pl.'s Dep. at ¶ 22. On January 13, 1995, she was granted disability compensation retroactive from May 13, 1994 at the rate of $902 a month. May 13, 1994 the plaintiff started receiving unpaid Family and Medical leave from Vital Signs which she used from May 13, 1994 to August 5, 1994.

On August 2, 1994, the Vital Signs Human Resources Manager sent Ms. Whitbeck a letter asking her to advise Vital Signs if she would "be able to return to work ... [or would] not be able to return to work" when her family and medical leave expired on August 7, 1994. The letter states, "If you are able to return to work *with a reasonable accommodation, we will require that you permit us to contact your physician* for further information and clarification on the nature and extent and duration of such accommodation." Def.'s Mot. at Exh. D (emphasis added). The plaintiff failed to respond to this letter. Pl.'s Dep. at 97. She did not advise Vital Signs if she would or would not return and furthermore she never requested accommodation nor did she provide her physician's name.

Instead on August 25, 1994, Ms. Whitbeck wrote a letter, not to personnel, but to the Vital Signs CEO Terry Wall proposing an alternative "unusual" position for herself on a "part-time basis as a trial." [2] She suggested that she could "offer to the sales force customized inservice fliers" from the convenience of her own home. *See* Def.'s Mot. at Exh. D. Her proposal was not accepted.

Three months after all her leave (unpaid or otherwise) was exhausted, on November 18, 1994, Vital Signs informed her she would be terminated effective November 21, 1994 and her voxmail mail would be discontinued, referring to the plaintiff's own letter which states she is not able to fulfill the requirements of the Sales Representative position.

During the course of her illness up to her termination, Vital Signs had provided Ms. Whitbeck her full pay for 5 months when she was performing none of her duties (February to July 1993),[3] 10 months of reduced work load also at full pay (July 1993 to May 1994), 3 months of unpaid Family and Medical leave, and then 3 months of unpaid leave, for a total of 21 months during which time Ms. Whitbeck was unable to perform full-time the essential functions of her duties. *See* Whitbeck Aff. at Pl.'s Exh. 1. Additionally, during her reduced work load period of 5 months, Vital Signs paid for a driver for six weeks to assist Ms. Whitbeck and up to 2–3 days a week, her supervisor Ms. Sherri Henricks often assisted her on her sales calls.

The plaintiff filed this litigation five months after her termination alleging disability discrimination and arguing that Vital Signs failed to accommodate her by not allowing her to use an Amigo cart to perform her duties.

The disputed facts of this case, to which the Court makes no determination, are that on April 28, 1994, there was a conversation between the plaintiff and Sherri Henricks, her supervisor while at lunch in Georgetown. At this time Ms. Whitbeck advised Sherri Henricks of the tumor's regrowth and then raised the issue of using a motorized cart. She contends Ms. Henricks said the cart would not look right, that she should seek long-term disability and that she would begin advertising for her position right away. Ms. Henricks denies saying the cart would not look right but does concede that she asked the plaintiff if she could advertise for the position, to which the plaintiff answered affirmatively. After this conversation, which was seven months before her termination, the plaintiff admits she never raised the issue of an Amigo or motorized cart again with the Office of Human Resources or other management. Moreover, she admits she never articulated to her employer, other than Ms. Henricks, that had she been able to use an Amigo

---

**2.** She further added in this letter that her proposal was made "[s]ince I cannot sit for hours at a time." The Court is unaware how an Amigo cart at that juncture would have assisted her if she could not sit for hours at a time. Arguably, she would have had the same difficulty with a wheelchair then and a wheelchair was already provided to her by Vital Signs.

**3.** The plaintiff states she returned to work on a part-time basis on July 6, 1993 and never returned to work on a full-time basis. *See* Pl's Opp'n at Exh. 3.

cart, she could have returned to her original position in a full capacity. Def.'s 108(h) St. at 32 (admitted) and Pl.'s Dep. at 224.

## II. Summary Judgment Standard

█ Summary judgment "should be granted only where there are no genuine issues of material fact, and all inferences must be viewed in a light most favorable to the non-moving party." *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence, however, of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. For the dispute must involve no genuine issue of material fact. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Material" facts are facts in dispute that "might affect the outcome of the suit under the governing law." *Id.*

█ Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. Analysis

The plaintiff contends the defendant failed to reasonably accommodate her disability in violation of the D.C. Human Rights Act which provides that it shall be an unlawful employment practice:

(1) to fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to

his compensation, terms, conditions, or privileges of employment, including promotion;

based upon the "disability" of any individual. D.C.Code § 1–2512(a)(1) (1981 and 1996 Supp.). The term "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C.Code § 1–2502.[4]

█ In interpreting alleged violations of D.C. Human Rights Act, the District of Columbia Court of Appeals has "adopted the Supreme Court's approach in *McDonnell Douglas Corp. v. Green* [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ] ..., the seminal case establishing the burden of proof in employment discrimination cases under Title VII." *Miller v. American Coalition of Citizens with Disabilities,* 485 A.2d 186, 189 (D.C.1984). Similarly, cases filed pursuant to the Americans with Disabilities Act ("ADA") or the Rehabilitation Act (predecessor to the ADA) follow the guidelines of the Supreme Court in *McDonnell Douglas* and *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) for a prima facie case of disability discrimination. *See Langon v. United States Dep't of Health and Human Services,* 749 F.Supp. 1, 4 (D.D.C.1990).

█ Thus the Court will analyze the plaintiff's alleged claims of violations of the D.C. Human Rights Act under the legal standards of disability discrimination of the ADA. At all times, the plaintiff "bears the burden of demonstrating that she could *perform the essential functions* of her job with reasonable accommodation." *Tyndall v. National Education Centers,* 31 F.3d 209, 213 (4th Cir.1994) (emphasis added). Moreover, the employee "at a minimum [must] present herself to the employer as someone willing and able to work, but for a surmountable handicap." *Miller* at 189.

---

**4.** D.C.Code § 1–2512 was amended in 1994 to substitute "disability" for "physical handicap," and it became effective June 28, 1994, before Ms. Whitbeck's termination date.

### 1. Disability Compensation Preclusion

█ In order to establish a prima facie case of handicap discrimination in violation of the ADA, as well as the D.C. Human Rights Act, the plaintiff must show that he/she is an otherwise "qualified individual with a disability." *See e.g., Southeastern Community College v. Davis*, 442 U.S. at 406, 99 S.Ct. at 2367 (stating the prima facie case requirement of an "otherwise qualified handicapped individual" of the Rehabilitation Act, a predecessor of the ADA), and *Langon*, 749 F.Supp. at 4. The term "qualified individual with a disability" is defined as:

> [A]n individual with a disability who, *with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.* For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8) (1995) (emphasis added).

Thus, in order to "trigger [the] defendant's duty to make reasonable accommodation," the plaintiff must establish that [s]he is a "good risk with a disability" as that term is used in the statute. *Langon*, 749 F.Supp. at 4, 5 n. 3. *See also, Southeastern*, 442 U.S. at 406, 99 S.Ct. at 2367; and *Williams v. Avnet, Inc.*, 910 F.Supp. 1124, 1131 (E.D.N.C.1995) (detailing the prima facie case requirements in a typical discharge case brought pursuant to the ADA).

The defendant contends the plaintiff's application for and receipt of two forms of disability compensation effective six months before her termination precludes Ms. Whitbeck from arguing the failure of Vital Signs to reasonably accommodate her disability. Social Security payments were retroactive to May 13, 1994 and Maccabees paid residual benefits from May 1 to May 13, 1994, and then total disability payments after May 13, 1994. The plaintiff had applied for Maccabees' coverage to begin in January of 1994

during the time she was being paid by Vital Signs.

In a somewhat analogous situation, the First Circuit Court of Appeals has found a plaintiff's statements made for the purposes of obtaining disability benefits to be binding admissions to the effect that the plaintiff could not perform the essential duties and functions of the job, thus making the plaintiff unqualified for the previously held position, and, accordingly, failed to meet the statutory requirements for a prima facie case of discrimination. *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 582, 584 (1st Cir.1992).

Likewise, the Eighth Circuit Court of Appeals, considered significant the fact that the plaintiff certified to her insurance carrier that she was unable to work because of her ailments and would be unable to work in the foreseeable future and, concluded that she did not meet the prerequisite to be protected by the statute. *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 771 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988).

Similarly, the U.S. District Court for the Eastern District of North Carolina ruled that representations made for claims for disability benefits precluded the plaintiff from showing that she was qualified to perform essential functions of her job during that same period. *Reigel v. Kaiser Foundation Health Plan of North Carolina*, 859 F.Supp. 963, 970, 976 (E.D.N.C.1994). In *Reigel*, the court stated:

> "Plaintiff in the case sub judice cannot speak out of both sides of her mouth with equal vigor and credibility before this court.... by claiming she was physically willing and able to work during the same period of time that she was regularly collecting disability payments on her assertions that she was physically unable to work."

859 F.Supp. at 970.

█ Here, Ms. Whitbeck claimed and was found disabled from employment as of May 13, 1994, six months before she was terminated from employment by Vital Signs, Inc. by both the Social Security Administra-

tion and Maccabees.[5] This disability determination renders the plaintiff unqualified for the position which she held either as it was or with a reasonable accommodation by the defendant. *See Reigel*, 859 F.Supp. at 970; *Langon*, 749 F.Supp. at 6; *August*, 981 F.2d at 584. Moreover, there is no assertion that the condition upon which the Social Security Administration or Maccabees made its determination that Ms. Whitbeck was disabled from employment, has in any way changed. She still draws Social Security disability compensation of $902 a month and $2100 from Maccabees in total disability. From the record available, the plaintiff has never presented herself as someone able to continue to work in a Sales Representative capacity, but for a surmountable handicap. *Miller* at 189.

The plaintiff herself wrote in a letter to Terry wall, CEO of Vital Signs, "While I am grateful that I can now walk independently without any assistive devices, my problems with walking do not enable me to perform in the capacity as a Vital Signs sales rep in the field that I know the position requires." Def.'s Mot. at Ex. D.

This Court recognizes as the Eighth Circuit did, "[t]hough it may seem undesirable to discriminate against a handicapped employee who is no longer able to do his or her job, this sort of discrimination is simply not within the protection" that the Court can afford to the plaintiff. 831 F.2d at 771.

Therefore, as Ms. Whitbeck was ineligible for further service for reasons entirely apart from those raised pursuant to lack of reasonable accommodation of her physical disability, the Court determines that the plaintiff failed to meet the statutory prerequisite to pursue a claim for discrimination under the D.C. Human Rights Act.

### 2. Duty to Reasonably Accommodate

■ Until an employee demonstrates that she was capable of performing the essential functions of her positions, with or without accommodation, the employer is under no corresponding duty to make a reasonable accommodation. *See Langon v. HHS*, 749 F.Supp. 1, 6 n. 3 (D.D.C.1990) and *Miller* 485 A.2d at 189. Accordingly, as the plaintiff failed to establish that she was able to perform the essential functions of her duties, the Court need not address whether the defendant provided a reasonable accommodation to the plaintiff.

■ However assuming the plaintiff had established her abilities, the plaintiff's case would still fail. The accommodation that the plaintiff requested was not just the use of an Amigo cart. The plaintiff requested her employer to provide an alternative "unusual" part-time position preparing "customized in-service fliers." Pl.'s Ex. 2. She requested this alternative position on August 25, 1994. Her request was denied on October 5, 1994. The plaintiff admitted in her deposition that she was "trying" with her supervisor Ms. Henricks "to work something out so [she'd] have another position within the company." Pl.'s Dep. at 103.

However, in this litigation, the plaintiff argues that her former employer failed to accommodate her Sales Representative position by not allowing her to use an Amigo cart to perform her duties. The plaintiff states, "Had she been allowed to use the motorized cart, she would not have stopped working and would not have applied for disability benefits." She argues that she could have performed her Sales Representative position effectively had she been able to use an Amigo cart.

However, the record and the plaintiff's own deposition speak otherwise. She applied for Maccabees disability compensation months before termination and also applied for Social Security disability compensation three months before she was both terminated

---

**5.** The plaintiff asserts the compensation was not for a permanent disability so she could still work. She contends she never certified herself that she was totally disabled. However, her doctor certified that she was totally disabled and she used his certification to secure her disabled status and disability compensation. Thus in relying on the doctor's attestations, she is deemed to have ad-

mitted it. Therefore, the issue is not what type of disability compensation she has but the fact that she sought disability compensation months before her termination rather than accommodation of her disability. She need not have been adjudged totally disabled for the Court to reach the same conclusion.

and before her employer requested by letter regarding her continued employment intentions. The key determination is that rather than pursue the Amigo cart issue and possible reasonable accommodations, she applied for disability compensation even before her termination. Further she never stated to her employer other than Ms. Henricks how she would have been able to perform her duties had she been provided an Amigo cart. Def.'s 108(h) St. at 32 (admitted). Instead, the plaintiff apparently knew that she could not return to her Sales Representative position, and, therefore, sought another part-time position with the company. Pl.'s Dep. at 102–103.

 This type of accommodation by an employer, providing an entirely new part-time position for a disabled employee, courts have found is not required by the ADA. *See August*, 981 F.2d at 581 at n. 4 and four cases cited therein (stating "courts have found no duty to accommodate handicapped employees by modifying the job schedule or description"). Additionally, "employers 'are not required to find another job for an employee who is not qualified for the job he or she was doing.'" *Id.* (citing *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987)). Moreover, an employer cannot be required "to make fundamental or substantial modifications in its operations to assure every disabled individual the benefit of employment." *Williams v. Avnet, Inc.*, 910 F.Supp. 1124, 1134 (E.D.N.C.1995) (citing *Reigel* at 973).

Vital Signs was not required, even if a reasonable accommodation was requested by the plaintiff, to create a new part-time position or to modify in the manner requested the duties of her Sales Representative position.

### IV. Conclusion

Accordingly, the plaintiff's case has failed in two regards—she has not established that she was able to perform the essential functions of her position since she applied for and

is receiving both monthly Social Security and Maccabees disability payments effective six months *before* her termination date (and applied for before her termination date), and secondly, the reasonable accommodation that Ms. Whitbeck sought [6] is not required under the law.

Therefore, the defendant's motion for summary judgment shall be granted.

---

**6.** The Court makes no factual determination as to whether Ms. Whitbeck did or did not formally make a request for an Amigo cart.