**James M. ROBERTSON, et al.,**

**v.**

**The NEUROMEDICAL CENTER, et al.**

**No. CIV. A. 95–1851.**

United States District Court,
M.D. Louisiana.

Oct. 10, 1997.

Mary Olive Pierson, Cooper & Pierson, Baton Rouge, LA, James E. Boren, Law Firm of James E. Boren, Baton Rouge, LA, for Plaintiff.

Michele Whitesell Crosby, J. Rodney Ryan, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Baton Rouge, LA, for Defendants.

## ORDER AND REASONS

BEER, District Judge.

This matter is before the Court on defendants' motion for summary judgment. For the following reasons, defendants' motion is granted as to the claims arising under the Americans with Disabilities Act, but denied in all other respects. The remaining state law claims are hereby remanded to state court for further proceedings.

**Facts**

Plaintiff, Dr. James Robertson, had been neurologist at the Neuromedical Center (hereafter "NMC") in Baton Rouge since 1981. He was a shareholder in the NMC corporation and was working under an employment contract with NMC. In May 1994, at the suggestion of one of his colleagues, plaintiff was tested and diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Approximately four months later, he was terminated from his employment with NMC. Plaintiff contends that he was wrongfully terminated because of his diagnosis of ADHD and that reasonable accommodations were recommended, but never implemented. Defendants contend that plaintiff's work-related problems predated his diagnosis of ADHD, and those problems resulted in his termination "for cause" as provided in his employment contract.

Plaintiff filed suit against NMC and various individual doctors in state court alleging violations of the Americans with Disabilities Act as well as breach of contract, loss of consortium, wrongful termination, tortious interference with a contract and intentional infliction of emotional distress.[1] Defendants removed the case to federal court on the basis of the ADA claim. The Court concludes that in the absence of a genuine issue of material fact, summary judgment on the ADA claim is appropriate. Fed.R.Civ.P. 56(c).

## ADA CLAIM

The ADA expansively prohibits discrimination in employment against persons with a disability, providing that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or dis-

---

**1.** Mrs. Robertson also claims loss of consortium and breach of contract.

Plaintiffs brought suit against NMC and several individual doctors. The ADA states that "No covered entity shall discriminate against a qualified individual with a disability...." 42 U.S.C. § 12112(a). A "covered entity" is an employer, employment agency, labor organization, etc. An employer is a person engaged in an industry affecting commerce and any agent of such person. 42 U.S.C. § 12111(5). There is no individual liability under Title VII or the ADEA, so likewise, there should be no individual liability under the ADA. *U.S. EEOC v. AIC Security Investigations,* 55 F.3d 1276 (7th Cir.1995). Accordingly, on that basis plaintiffs' claims against the individual defendants arising under the ADA are dismissed.

charge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To prevail on an ADA claim, the plaintiff must prove 1) he has a "disability"; 2) he is "qualified" for the job; and 3) an adverse employment decision was made solely because of his disability. *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763 (5th Cir.1996).

## A. IS PLAINTIFF DISABLED?

A "disability" is a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 42 U.S.C. § 12102(2). In this case, there is no dispute that plaintiff has been diagnosed with ADHD. For purposes of this summary judgment motion, defendants stipulate that ADHD is a disability that substantially limits plaintiff's ability to work.[2]

## B. IS PLAINTIFF A "QUALIFIED INDIVIDUAL"?

A "qualified individual with a disability" is one who can perform the essential functions of his job with or without reasonable accommodations. 42 U.S.C. § 12111(8).

■ Plaintiff claims that he is qualified because he is able to perform the essential functions of his job with reasonable accommodation. Plaintiff argues that issues of fact exists as to whether the administrative portion of his job is an "essential function" and whether he could be reasonably accommodated.

## ESSENTIAL FUNCTIONS

The Code of Federal Regulations provides that,

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

(i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).[3]

In support of his contentions, plaintiff cites the fact that prior to his termination, there were no written job descriptions. In addition, he relies on conflicting lists of reasonable accommodations developed by his treating physician, Dr. Stephen Cavalier, and a coworker, Dr. Joseph to establish that the essential functions of his position were undefined.

This evidence, however, does not create an issue of fact as to whether the "administrative portion" of his job is essential. Rather, the evidence overwhelmingly establishes that

---

**2.** Defendants contend that they decided to fire plaintiff at a meeting which took place on August 15, 16 days prior to the date when Robertson formally notified his employer of his diagnosis, and at that time, they had no knowledge of the "diagnosis" of ADHD. Thus, according to defendants, the adverse employment action could not have been based "solely" on plaintiff's diagnosis of ADD.

Plaintiff states, however, that defendants were aware of his disorder well before the August meeting and provide evidence that another doctor at the clinic, upon examining plaintiff's daughter for ADD, stated in her notes that "the father probably has ADD."

The ADA does not require the employer to be aware of a "diagnosis." The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. 29 C.F.R. 1630.2(j). Thus, it is not necessary for NMC to be formally notified of a diagnosis; and, for purposes of this order, the court will presume that the defendants were aware of the limitations caused by plaintiff's disability.

**3.** Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

*29 C.F.R. § 1630.2(n)(3).*

it is. In his complaint, plaintiff states that "he began to have a minor amount of difficulty with routine paperwork and charts." The record is replete with letters and memoranda reprimanding Robertson for failure to complete patients' charts and timely interpret test results. In fact, Robertson often lost hospital privileges as a result of these problems. (See Attachments to Plaintiff's Exhibit J).[4] The dictionary description of a "neurologist" submitted by plaintiff states that a neurologist: "Orders and studies results of ... patient's blood.... [P]rescribes and administers medication and drugs. Orders and studies results of electroencephalograms or x-rays...." (Plaintiff's opposition memorandum, page 12). Clearly, plaintiff's own evidence suggests that interpreting test results is part of his job. Accordingly, the court finds that there is no valid factual dispute as to the essential functions of his position. To take this a step further, the Court would be very concerned that any acceptance of plaintiff's attempts to minimize the overall record keeping and record referencing aspects of his professional activity—so necessary and important in this particular field of medicine— would be a serious oversight and indeed, plain error.

Having determined that no material factual dispute exists as to the essential functions of plaintiff's position, the Court must next consider whether plaintiff is "qualified" to perform those functions in light of his disability. In that vein, the Court is persuaded by plaintiff's statements to his insurance carriers. Plaintiff has applied for and is receiving total disability benefits from private insurance carriers. To receive disability benefits, plaintiff and his physicians have certified to these insurance carriers that plaintiff is unable to perform any type of work for compensation because of ADHD.

Several courts have considered the role of disability benefits in ADA claims. In instances whether the plaintiff has pursued benefits from Social Security Administration, the Fifth Circuit has concluded that the receipt of such benefits creates a rebuttable presumption that the claimant is judicially estopped from asserting that he is a qualified individual with a disability. *Cleveland v. Policy Management Systems,* 120 F.3d 513, 518 (5th Cir.1997).

The Fifth Circuit has not addressed a situation in which private insurance disability benefits are sought. Although judicial estoppel is not at issue in such cases, the certification of total disability to those insurance companies is the same as that which would be made to the Social Security Administration. Other courts have considered statements to insurance companies to be binding admissions that the plaintiff could not perform the essential functions of the job. *Whitbeck v. Vital Signs Inc.,* 934 F.Supp. 9, 14 (D.D.C.1996); *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 582–84 (1st Cir.1992); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 771 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988); *Reigel v. Kaiser Foundation Health Plan of North Carolina,* 859 F.Supp. 963, 970, 976 ( E.D.N.C.1994) ("Plaintiff in the case sub judice cannot speak out of both sides of her mouth with equal vigor and credibility before this court .... by claiming she was physically willing and able to work during the same period of time that she was regularly collecting disability payments on her assertions that she was physically unable to work."). These courts have held that plaintiff's representations of total disability to insurance carriers, by itself, is enough to conclude that plaintiff was not a "qualified individual with a disability." See *Hatfield v. Quantum Chemical Corp.,* 920 F.Supp. 108, 110 (S.D.Tex.1996).

Plaintiff claims, however, that he became severely depressed as a result of his termination, which combined with ADHD, rendered him totally disabled. (Plaintiff's opposition memorandum, exhibit C).[5] However,

---

**4.** Defendant related other instances of unacceptable behavior by Robertson. Robertson attributes this behavior, not to his ADHD but to "manic behavior" resulting from the drug he was taking for ADHD.

**5.** Plaintiff contends that there is a genuine issue of fact as to whether he could perform his duties on the date of termination and that the disability insurance claim forms are not probative of this issue because they state that the disability started the day he was terminated. The court emphati-

there is no evidence that Robertson sought disability benefits or an accommodation for depression, or even notified NMC that this was a cause of his disability. In fact, in numerous forms filed with plaintiff's disability carriers, plaintiff and his physician certify that plaintiff's diagnosis is ADD, that his symptoms are "decreased memory, poor attention and focusing ability, some paresthesia", and that his occupational restrictions are "unable to concentrate, focus or remember, difficulty with analyzation and problem solving." [6] (Defendants' reply memorandum, Exhibit 1). These documents make no mention of depression. Plaintiff, in correspondence to his treating physician, states that he received "full disability for ADD only with no mention of a bipolar disorder." [7] (Defendants' reply memorandum, Exhibit 2). In addition, plaintiff testified in his deposition that he is "never going to practice neurology again ... because [he] has ADD." (Plaintiff's deposition, page 155). Plaintiff makes no mention of depression as the cause of his disability, until now.

Plaintiff's continuous and unequivocal representations to his insurance carriers that he is totally disabled because of ADD, combined with his deposition testimony, preclude him from now asserting that the cause of his disability is depression. Plaintiff sought accommodation due to ADD while he was employed; when he was terminated, he sought and received disability benefits due to ADD. This evidence clearly establishes that plaintiff is totally disabled from practicing neurology.

cally does not agree. The Missouri case cited by plaintiff states that: "Appellant's statements in the record that he was capable of performing the duties of his job and was performing those duties until the date he was terminated, and his statements that the termination caused him severe depression which is a major aspect to his total disability, indicate that there is a genuine issue as to the material fact of whether appellant was capable of performing his job duties." *Daffron v. McDonnell Douglas Corp*, 874 S.W.2d 482, 488 (Mo.Ct.App.1994). There, plaintiff's depression was "a major aspect to his total disability." Here, the only indication that plaintiff's claimed disability was caused or aggravated by depression is his own self-serving affidavit which the Court must reject.

## REASONABLE ACCOMMODATIONS

■ Although the Court is convinced that plaintiff is not a qualified individual with a disability as discussed above, the Court will nonetheless consider whether plaintiff can be reasonably accommodated.

■ Plaintiff contends that NMC refused to negotiate a set of reasonable accommodations and that whether accommodation is possible is an issue of fact. Defendants claim that plaintiff's proposed accommodations were unreasonable and that NMC is not required to accommodate plaintiff because he would pose a direct threat to the health and safety of others.

The ADA prohibits an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

Reasonable accommodation may include—

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and

6. In fact, the Insured's Statement of Total Disability contains a notification that it is fraudulent to fill out the form with false information or to omit important facts. To do so could subject the plaintiff or his attending physician to an insurance fraud investigation.

7. In correspondence to his insurance carriers, Robertson states that he did not become depressed until he was fired from his job. However, he did not indicate that this depression was the cause of his disability. (Defendants' reply memorandum, Exhibit 2). Plaintiff and one of his insurance companies were disputing whether plaintiff suffered from ADHD or a bipolar disorder. The latter diagnosis would have limited the amount of his disability benefits.

other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The regulations define reasonable accommodations as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(1)(ii) (1996). The ADA does not, however, require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform the duties. Additionally, it does not require anything that would pose an undue hardship, i.e., significant difficulty or expense, on the operation of the business. 42 U.S.C. §§ 12112(b)(5)(A) and 121 1(10)(A), and does not require the business to fundamentally alter its program or to find or create a new job for the individual. *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995).

Considering the limitations on plaintiff's abilities caused by ADHD, the type of work he is engaged in, the interests of NMC in running its business, and most importantly, the safety of the patients at NMC, the Court concludes that plaintiff cannot establish a prima facie case that he could continue in his position as a neurologist because accommodation is not possible in these circumstances.

Defendants claim that plaintiff's proposed accommodations were unreasonable because he was asking for a part time position, no call duty, and other concessions without a reduction in pay. Plaintiff argues that a reduction in pay would be automatic because he would have fewer patients. Plaintiff contends that NMC refused to negotiate a set of reasonable accommodations and whether accommodation was possible is a question of fact.

In this case, there is substantial evidence that plaintiff's proposed accommodations were unreasonable. *See Reigel v. Kaiser Foundation Health*, 859 F.Supp. 963 (E.D.N.C.1994). There, a physician's request for restricted duties would have depleted the employer's physicians by one and increased its administrative staff by one.

Here, regardless of the compensation issue, to reduce plaintiff's hours, limit his call duty and assign additional staff to help with administrative work would create more work for the other physicians who took over his call duty, and would require NMC to assign or hire an administrative assistant to help him with his paperwork. Even so, an assistant would not be able to interpret the test results or complete patient charts as is required of the neurologists at NMC. Accordingly, the Court concludes that the evidence does not in any way support a finding that accommodation in this case is possible.

## DIRECT THREAT

More importantly, the ADA does not require the employer to accommodate an individual if the employee would pose a direct threat to the health or safety of others. 42 U.S.C. § 12113(b). (*See Turco v. Hoechst Celanese Chemical Group, Inc.*, 101 F.3d 1090 (5th Cir.1996)). Based on plaintiff's own testimony that he was concerned for his patients safety, Robertson posed a "direct threat" to the health and safety of others in the workplace. Robertson's shortterm memory problems already caused mistakes to be made in patients charts and mistakes in dispensing medicine. (Robertson deposition, pages 198–199). Most significantly, Robertson voiced his own concerns about his ability to take care of patients, stating that it was only a matter of time before he seriously hurt someone. (Robertson deposition, page 154–157). In light of this evidence, the court finds that accommodation in this case would be unjustified from the standpoint of basic medical safety of the patient such that consideration of all other aspects of plaintiff's ADA claim is superfluous.

In sum, plaintiff is not a qualified individual under the ADA because he cannot perform the essential functions of his job and no accommodation could be devised which would compensate for his particular disability. Accordingly, for the foregoing reasons, the Court grants defendants' motion for summary judgment in part, dismissing plaintiff's claims arising under the Americans with Dis-

abilities Act, and remands the remaining claims to state court for further proceedings.